### 1273

Karole K. JENSEN, As Administratrix of the Estate of Michael Clark, Deceased, Appellant v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES et al., Defendants, of whom Virgil Conrad, in his individual and official capacity as Commissioner of the Department of Social Services, et al., are Respondents.

(377 S. E. (2d) 102)

Court of Appeals

See also 570 F. Supp. 114.

*O. Fayrell Furr, Jr.*, Myrtle Beach, and *Charles L. Henshaw, Jr.*, Columbia, both of *Law Offices* of *O. Fayrell Furr, Jr., for appellant.*

*Joel H. Smith* and *Arthur L. Coleman*, both of *Nelson, Mullins, Riley & Scarborough, Mary Gordon Baker*, of *Nexsen, Pruet, Jacobs & Pollard, George C. Beighley*, of *Richardson, Plowden, Grier & Howser*, Columbia, *H. Grady Kirven*, of *Watkins, Vandiver, Kirven, Gable & Gray*, of Anderson,

and *F. Dean Rainey, Jr.*, of *Rainey, Britton, Gibbes & Clarkson*, Greenville, *for respondents.*

Heard Dec. 7, 1987.

Decided Dec. 28, 1987.

BELL, Judge:

Karole K. Jensen, administratrix of the estate of Michael Clark, brought wrongful death and survival actions alleging that numerous defendants negligently failed to prevent Michael's death. The original defendants included: the South Carolina Department of Social Services (DSS); Virgil conrad, the Commissioner of DSS; the members of the State DSS Board; the members of the Anderson County DSS Board; and the following employees of the Anderson County DSS Board: Kenneth Pryor, Director; Dawn Hawkins, Program Director for Human Services; and Susan Straup and Charie Ann Jenkins, social workers. Pursuant to Rule 12(b)(6) of S. C. R. Civ. P., the defendants moved to dismiss for failure to state a cause of action. At the motion hearing, Jensen agreed to the dismissal of the State Department of Social Services and two members of the Anderson County DSS Board, Jerry Herd and Harold E. Simpson. The trial court granted the motion to dismiss as to the remaining defendants. Jensen appeals. We affirm in part, reverse in part and remand.

On appeal from granting a Rule 12(b)(6) motion, the reviewing court may not consider matters outside the pleadings; well pleaded facts are admitted, but inferences drawn by the plaintiff from such facts and conclusions of law are not admitted. *Carolina Winds Owners Association, Inc. v. Joe Harden Builder, Inc.*, 297 S. C. 74, 374 S. E. (2d) 897 (Ct. App. 1988).

In February 1980, a schoolteacher reported that Shane Clark, Michael's older brother, was being abused. The teacher suspected that Wayne Drawdy, a boy friend of Shane's mother, was beating the children in the Clark home. On the day of the report, Jenkins talked with Shane at the school. Shane had unexplained bruises on his face and body and expressed a fear of his "father," Drawdy.

In these circumstances, the South Carolina Child Protec-

tion Act[1] required Jenkins to conduct "an appropriate and thorough" investigation to determine whether the report of abuse was "indicated" or "unfounded." Jenkins started the investigation by talking to Shane, but after that she gathered no further information for the file, because she was unable to contact the Clark family. She did not contact Shane's school or check the food stamp index in her attempt to locate them. If Jenkins had visited the home and determined Michael's welfare was threatened, the Act would have required her to petition the family court for his removal from the home. *See* Section 20-7-736, Code of Laws of South Carolina, 1976, as amended.

In May 1980, Jenkins and Straup closed the ·Clark file as "unfounded." Jenkins never located the Clark family. On June 23, 1980, Drawdy beat Michael to death.

Jensen brought suit claiming the defendants breached duties imposed on them by the South Carolina Act and the federal Child Abuse Prevention and Treatment Act of 1973.[2] She maintains that if an appropriate investigation had been made and Michael had been removed from the home, as these statutes require, his death could have been prevented.

The purpose of the South Carolina Child Protection Act is set forth in the statute itself:

> Recognizing that abused and neglected children in South Carolina need protection, it is the purpose of this article to save them from injury and harm by establishing an effective reporting system and encouraging the reporting of children in need of protection; . . . by establishing fair and equitable procedures, compatible with

---

[1] Codified in Sections 20-7-110, 20-7-480 through 20-7-560, 20-7-610, 20-7-640 through 20-7-736, Code of Laws of South Carolina, 1976, as amended.

[2] Pub. L. No. 93-247, 88 Stat. 4 (codified at 42 U. S. C. Sections 5101 to 5106). In a suit involving another abused child, Sylvia R. Brown, Jensen brought suit against Conrad and numerous defendants alleging violations of the federal Act and of Sylvia's civil rights. *See Jensen, as Administratrix of the Estate of Sylvia R. Brown v. Conrad,* 570 F. Supp. 91 (D. S. C. 1983), *affirmed* 747 F. (2d) 185 (4th Cir. 1984), *cert. denied,* 470 U. S. 1052, 105 S. Ct. 1754, 84 L. Ed. (2d) 818 (1985). The district court found that the federal Act was a federal-state funding statute and did not create legally cognizable individual rights. We agree with the district court and find it unnecessary to discuss Jensen's federal claims in this appeal.

due process of law to intervene in family life with due regard to the safety and welfare of all family members. ...

Section 20-7-480, Code of Laws of South Carolina, 1976, as amended.

The Act requires local child protection agencies:[3] (1) to commence a thorough investigation of all reports of suspected child abuse within twenty-four hours of receipt; (2) to make a determination whether a report is "unfounded" or "indicated" within sixty days of receipt of the report; (3) to base an "indicated" finding upon a determination that abuse is more likely than not to have occurred; and (4) to provide protective services to children if abuse is "indicated." Section 20-7-650, Code of Laws of South Carolina, 1976, as amended. If it appears the abuse is endangering the child's welfare, the Act requires the agency to petition the family court to remove the child from the home. Section 20-7-736, Code of Laws of South Carolina, 1976, as amended.

The trial court found the Act does not create a private right of action in favor of Jensen. The court also found any action at common law was precluded because the duties of these defendants are public in nature and cannot be privately enforced. Finally, the court found the defendants were entitled to official immunity.

I.

For convenience, the defendants can be divided into two groups: the statewide DSS officials and the officials and employees of the local child protection agency. We first address Jensen's claims against the statewide officials. She asserts these defendants had a duty to act to prevent Michael's death.

Ordinarily, the common law imposes no duty on a person to act. An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other circumstance.

In order to show that the defendant owes him a duty of

---

[3] The Act designates each county's Department of Social Services as the local child protection agency. Section 20-7-640.

care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect. *Rayfield v. S. C. Department of Corrections*, 297 S. C. 95, 374 S. E. (2d) 910 (Ct. App. 1988.

Although a statute may create an affirmative legal
■ duty, the "public duty" rule presumes statutes creating or defining the duties of a public office have the essential purpose of providing for the structure and operation of the government or of securing the general welfare and safety of the public. *Id.* They create no duty of care towards individual members of the general public.[4] However, the Legislature may enact a statute with the essential purpose of protecting identifiable individuals from a particular harm. In such a case, the statute is said to create a "special duty" which will support an action for negligence. *Id.*

A special duty exists if: (1) an essential purpose of the
■ statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office. *Id.*

Jensen alleges that the following duties imposed by
■ the Child Protection Act were breached by the DSS officials at the state level:

(1) the members of the State DSS Board failed to implement the requirement that the full contents of tele-

---

[4] Jensen argues that the abrogation of sovereign immunity in South Carolina necessarily abolished the "public duty" rule also. For the reasons stated in *Rayfield v. S. C. Department of Corrections, supra,* we reject this argument.

phone reports of suspected cases of child abuse be forwarded to local child protection agencies, *see* Section 20-7-640, Code of Laws of South Carolina, 1976, as amended;

(2) Conrad and the members of the State DSS Board failed to conduct training programs for the staff of the Anderson County child protection office, *see* Section 20-7-660, Code of Laws of South Carolina, 1976, as amended;

(3) Conrad failed to establish a separate organizational unit within DSS to fulfill the purposes of the Act, *see* Section 20-7-640, Code of Laws of South Carolina, 1976, as amended;

(4) Conrad and the State DSS Board failed adequately to assign and monitor child protection responsibility, and to provide assistance in diagnosing cases of child abuse, *see* Section 20-7-640, Code of Laws of South Carolina, 1976, as amended.

She claims that each of these statutes is the source of a duty of care to Michael Clark.

These sections deal with the organization and general management of the child protection program at the statewide level. They do not impose on these statewide officers any duties with respect to individual cases of child abuse. They provide no specific authority for these officers to intervene directly to protect individual children from abuse. For these reasons, we hold the DSS officials at the state level had no special duty to Michael Clark by virtue of the Act.

## II.

Jensen alleges that the following duties imposed by the Child Protection Act were breached by the local child protection agency, its officers, and its employees.

(1) Hawkins and Pryor failed to conduct training programs for the staff of the Anderson County child Protection office, *see* Section 20-7-660, Code of Laws of South Carolina, 1976, as amended;

(2) the Anderson County DSS Board, Hawkins and Pryor failed to adequately staff the Anderson County

child protection office with persons trained in the investigation of child abuse, *see* Section 20-7-650, Code of Laws of South Carolina, 1976, as amended;

(3) members of the Anderson County DSS Board, Straup, and Jenkins failed to conduct an appropriate and thorough investigation of reported child abuse and failed to determine on the facts discovered whether a report of suspected child abuse was "indicated" or "unfounded," *see* Section 20-7-650, Code of Laws of South Carolina, 1976, as amended.

The sections mandating the training of staff and the staffing of the local agency with persons trained in the investigation of child abuse prescribe general managerial duties. They relate to the general operations of the local child protection agency, not to the provision of protective services to particular children. These provisions may incidentally benefit abused children, but their essential purpose is to define and allocate the duties of various public agencies, officers, and employees.

The sections mandating investigation and intervention to remove an endangered child from the home stand on a different footing. The essential purpose of these sections is to protect abused children when their cases have been reported to DSS officials. Such children comprise a clearly identifiable class; Michael Clark was plainly a person within the class. These sections impose on the local child protection agency and its social workers a specific duty to investigate and to intervene in cases involving children like Michael. Jenkins received a report that children were being abused in the Clark home. She knew from personal observation that Shane Clark had visible physical injuries which pointed to child beating. In the circumstances, she could foresee that serious injury was likely to come to the Clark children if there were no intervention to protect them. Upon receipt of the report, Jenkins had full authority to investigate and to petition the family court for removal of the children from the home to prevent further injury.

Since all of the elements of a special duty were present, Jenkins, Straup, and the Anderson County DSS Board had a special duty to protect Michael Clark. They breached this duty by closing the file as "unfounded"

without making a home visit. As a result, Michael was left in the home where it was foreseeable he would be subjected to further abuse. The failure of the agency to remove him from the home led to his death. On the face of the complaint, then, these defendants were liable for Michael's death.

### III.

The local board members, Straup, and Jenkins argue that even if they are liable for breaching a duty of care owed to Michael, they are shielded from suit by official immunity. Official immunity protects a public officer from liability for discretionary acts in the performance or nonperformance of his duties when the actions are taken without bad faith or malicious intent. *See Long v. Seabrook*, 260 S. C. 562, 197 S. E. (2d) 659 (1973); *McCall v. Batson*, 285 S. C. 243, 329 S. E. (2d) 741 (1985) (retaining official immunity after abrogation of sovereign immunity).

A public official's duties are customarily classified as either discretionary or mininsterial. *Long v. Seabrook, supra.* Discretionary acts are those requiring personal deliberation, decision, and judgment. *State v. Haley*, 687 P. (2d) 305 (Alaska 1984); *see also Dunbar v. Fant*, 170 S. C. 414, 170 S. E. 460 (1933); *Long v. Seabrook, supra.* A duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. *Long v. Seabrook, supra.* Official immunity protects public officers in the exercise of their discretionary duties, not their ministerial duties.

In this case, the local child protection agency, through its employees Jenkins and Straup, commenced an investigation as mandated by Section 20-7-650. The facts Jenkins discovered in her initial investigation were indicative of a classic situation of child abuse. Nevertheless, after Jenkins tried and failed to make contact with the Clark family over a period of two months, she and Straup concluded the case was "unfounded" rather than "indicated." The complaint alleges this decision was reached because Jenkins assessed the case on whether the evidence of abuse was "conclusive," rather than applying the statutory standard that abuse is "more likely than not" to have occurred. *See* Section 20-7-650(C).

Ordinarily, the decision that a case is "unfounded" involves the application of judgment to the particular facts of that case and is, therefore, a discretionary act.[5] It has also been held that the decision to pursue a report of abuse after the initial investigation is discretionary. *See Hodorowski v. Ray,* 844 F. (2d) 1210 (5th Cir. 1988), *Austin v. Borel,* 830 F. (2d) 1356 (5th Cir. 1987), *reh'g denied,* 836 F. (2d) 1346 (1987). Thus, in the usual case, the scope of the investigation and the decision to close a file are matters involving discretion which are shielded by official immunity.

The statute, however, mandates an "appropriate and thorough" investigation before a decision is taken to close a file. The caseworker has no choice about conducting a thorough investigation; it is a ministerial duty imposed by the statute itself. While the manner in which the investigation is conducted is a matter of discretion, if the investigation is so incomplete that the only reasonable conclusion to be drawn is that it was not "thorough," then the caseworker has breached a ministerial duty, not a discretionary one.

The complaint in this case alleges that, in fact, the decision to close the file involved no exercise of discretion at all, because the investigation was dropped after the initial interview. Consequently, there was no information in the file upon which to base a discretionary judgment. If these allegations are true, the local agency, Straup, and Jenkins would not be protected by official immunity.

Dismissal under Rule 12(b)(6) is seldom appropriate when the defense of immunity is pleaded. In such cases the court must determine whether the public official acted within the scope of his discretionary authority. To establish this requires more than an assertion in the pleadings that the action complained of falls within the scope of the official's discretionary authority. Generally, there must be a showing by competent evidence to establish the discretionary nature of the official action. *See Williams v. Treen,* 671 F. (2d) 892, 897 at n. 7 (5th Cir. 1982), *cert.*

---

[5] Indeed, the complaint charges Jenkins and Straup with an error much like a judge might make—applying the wrong rule of decision to the known facts.

*denied,* 459 U. S. 1126, 103 S. Ct. 762, 74 L. Ed. (2d) 977 (1983); *Stalheim v. Doskocil,* 273 S. C. 547, 257 S. E. (2d) 738 (1979).

In addition, where the allegations of the complaint give rise to competing inferences on a question of material fact, dismissal of the case under Rule 12(b)(6) is not appropriate. Since the pleader is only entitled to the benefit of the well pleaded facts and not to the inferences to be drawn therefrom, a further development of the facts is necessary before the case can be decided. *See Henderson v. Gould, Inc.,* 288 S. C. 261, 341 S. E. (2d) 806 (Ct. App. 1986).

In this case, the facts alleged in the complaint support more than one inference regarding the adequacy of the investigation. On the one hand, they create an inference that Straup and Jenkins had sufficient information to decide child abuse was "indicated," but applied the wrong legal standard to the known facts. On the other hand, the pleadings create an inference that Jenkins did not conduct the mandated "thorough" investigation, so that Straup and Jenkins lacked the facts needed to make their action truly discretionary. On the former inference Straup and Jenkins would be entitled to immunity; on the latter they would not.

We, therefore, reverse the judgment in favor of the local child protection agency, Straup, and Jenkins, and remand on the ground that further development of the facts is desirable and necessary before the issue of immunity is adjudicated.

The judgment is affirmed as to Conrad, the members of the State DSS Board, the members of the Anderson County DSS Board, Pryor, and Hawkins. The judgment is reversed and the case remanded as to Straup and Jenkins for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

SANDERS, C. J., and GARDNER, J., concur.