EVELYN GRACE COLEMAN, ADMINISTRATRIX FOR THE ESTATE OF MONICA AVIS COBB AND MARION ANNETTE COLEMAN, PLAINTIFF v. KATHY LUNCEFORD COOPER (FORMERLY KATHY LUNCEFORD), WAKE COUNTY DEFENDANTS

No. 9010SC386

(Filed 7 May 1991)

**1. Public Officers § 9 (NCI3d)— liability of Social Services worker—public official defense—summary judgment for defendant—improper**

　　The trial court erred by granting summary judgment for defendant Cooper, a Social Services employee, based on the public official defense in a wrongful death action arising from the murder of two children by their father while a sexual abuse investigation was in progress. The Court of Appeals

COLEMAN v. COOPER

[102 N.C. App. 650 (1991)]

stated in *Coleman v. Coleman*, 89 N.C. App. 188, that a violation of N.C.G.S. § 7A-544, which provides for the protection of abused or neglected juveniles, could give rise to an action for negligence, and defendant Cooper was an employee of Wake County and could be subject to liability in the performance of her official duties.

**Am Jur 2d, Public Officers and Employees § 375.**

**Tort liability of public authority for failure to remove parentally abused or neglected children from parents' custody. 60 ALR4th 942.**

2. **Counties § 124 (NCI4th)— wrongful death action—against Social Services employee—Tort Claims Act**

The trial court did not err in a wrongful death action against a Social Services employee in Wake County arising from the murder of two alleged sexual abuse victims by their father by granting Wake County's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(1) because the action should have been brought before the Industrial Commission. Wake County was acting as an agent of the Social Services Commission and Department of Human Resources in its delivery of protective services to decedents; a cause of action originating under the Tort Claims Act against Wake County as a subordinate division of the State must be brought before the Industrial Commission.

**Am Jur 2d, Public Officers and Employees § 612.**

Judge ARNOLD concurring in the result.

APPEAL by plaintiff from orders entered 28 February 1990 by *Judge Robert L. Farmer* in WAKE County Superior Court. Heard in the Court of Appeals 27 November 1990.

This is the second appeal of this matter. In this action, plaintiff seeks damages for the wrongful deaths of her two minor daughters. On 3 April 1985, plaintiff's two deceased daughters, Marion Coleman and Monica Cobb, were stabbed and murdered by Melvin Coleman. Prior to the daughters' deaths, defendant Kathy Lunceford Cooper was an employee of the Wake County Department of Social Services (hereinafter Wake County). She had conducted a sexual abuse investigation on or about 28 February 1985 after a school nurse made a neglect report to Wake County after examining Marion

Coleman and discovering that she had venereal disease. Marion had told the school nurse that she and her half-sister Monica Cobb were involved in sexual relations with a male relative.

On 28 February 1985, defendant Cooper interviewed Marion who informed her that she had been sexually abused by her father, Melvin Coleman, beginning when she was approximately eight years of age. Marion informed defendant Cooper that she had had vaginal intercourse with her father many times. Marion also told defendant Cooper that Melvin Coleman had sexually abused his step-daughter, Monica Cobb. She also reported incidents of physical abuse.

Defendant Cooper then interviewed Monica. Monica told defendant Cooper that she had been sexually abused since the age of six or seven. She stated that at age eight or nine she engaged in sexual intercourse with Melvin Coleman. During each respective interview, both Marion and Monica told defendant Cooper that they had told their mother about the sexual activity during Christmas of 1983. They stated that eventually Ms. Coleman would not allow the girls to stay with Melvin Coleman alone but the sexual abuse still continued and that Mrs. Coleman was afraid to do anything about it because Melvin Coleman had physically abused her in the past.

During an interview Ms. Coleman told defendant Cooper that she was aware of the sexual abuse and that she was afraid of her husband's reaction to the investigation. Ms. Coleman stated that she had confronted Melvin Coleman about his sexual abuse of the two girls during Christmas of 1983 and that he had stayed away from the family for approximately four months. Defendant Cooper informed Ms. Coleman that she would be referring the matter to law enforcement so that they could conduct their investigation. Subsequently medical examinations were conducted on both girls. Defendant Cooper also informed school officials that Melvin Coleman was not to have any contact with the girls.

On 7 March 1985, defendant Cooper called Melvin Coleman and requested a meeting with him. At the meeting she confronted him with the sexual abuse allegations. Melvin Coleman denied the allegations. On 2 April 1985, Melvin Coleman's attorney informed him that indictments had been handed down by the grand jury. Rather than turn himself in, on 3 April 1985, Melvin Coleman went to the trailer where the girls were living, broke in, stabbed and murdered the girls. Afterwards, he fire-bombed the trailer.

## COLEMAN v. COOPER

[102 N.C. App. 650 (1991)]

Plaintiff, as administrator of the estates of Monica Cobb and Marion Coleman, filed a complaint on 12 February 1986 against Kathy Cooper, Wake County, the City of Raleigh and the City of Raleigh Police Department seeking damages for the wrongful death of her decedents. On 27 May 1987, the trial court granted summary judgment for defendants Cooper and Wake County. Thereafter on 5 June 1986 the trial court granted summary judg- ment for defendants City of Raleigh and the City of Raleigh Police Department. On appeal, in *Coleman v. Cooper*, 89 N.C. App. 188, 366 S.E.2d 2, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), this court reversed the trial court's summary judgment order as to the negligence of defendants Cooper and Wake County. On re- mand, defendants filed amended answers. On 26 January 1990, defendant Cooper filed another motion for summary judgment and on 29 January 1990 along with defendant Wake County filed a motion to dismiss pursuant to Rule 12(b)(1) of the N.C. Rules of Civ. Pro. On 2 February 1990, defendant Cooper and defendant Wake County filed an additional motion to dismiss pursuant to N.C. Rules of Civ. Pro. 12(b)(2) and on 5 February 1990, defendant Cooper filed an additional motion to dismiss pursuant to N.C. Rules of Civ. Pro. 12(b)(6). On 28 February 1990 the trial court entered an order granting Wake County's motion to dismiss pursuant to Rule 12(b)(1) of the N.C. Rules of Civ. Pro. and denied defendant Wake County's other motions. The trial court also entered an order granting defendant Cooper's motion for summary judgment and denied her motions to dismiss. Plaintiff appeals.

*Blanchard, Twiggs, Abrams & Strickland, P.A., by Douglas B. Abrams and Anna Neal Blanchard, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Grady S. Patterson, Jr. and Susan K. Burkhart, for defendant-appellees.*

EAGLES, Judge.

Initially we note that

[i]nvestigations by a social service agency of allegations of child sexual abuse are in the nature of governmental func- tions. Such activities are performed for the public good. Thus a county normally would be immune from liability for injuries caused by negligent social services employees working in the course of their duties. The General Assembly, however, has authorized counties through a statute to waive the defense

of immunity for negligent actions that occur in the performance of governmental functions through the purchase of liability insurance. Under this law, . . .; the DSS, as a County agency; and the County employees may be liable for negligent or intentional actions carried out in the performance of their social services duties. *McNeill v. Durham County ABC Board*, 87 N.C. App. 50, 359 S.E.2d 500 (1987), *modified on other ground*, 322 N.C. 425, 368 S.E.2d 619, *reh'g denied*, 322 N.C. 838, 371 S.E.2d 278 (1988).

*Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 235-36, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990). We now address the liability of each defendant in light of these principles.

## I. Defendant Cooper

[1] Plaintiff first assigns as error the trial court's entry of judgment in favor of defendant Cooper based upon the public official defense. Plaintiff argues that in our prior opinion, *see Coleman, supra*, we established that defendant Cooper "does not have the status or protection of a 'public official.'"

When a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officers in determining negligence liability. *Harwood v. Johnson*, 92 N.C. App. 306, 309, 374 S.E.2d 401, 401 (1988). A public officer sued individually is normally immune from liability for "mere negligence." *Id.* An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury. *Id.; Givens v. Sellars*, 273 N.C. 44, 159 S.E.2d 530 (1968).

A public officer is someone whose position is created by the constitution or statutes of the sovereign. *State v. Hord*, 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965). "An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power." *Id.* Officers exercise a certain amount of discretion, while employees perform ministerial duties. Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are "absolute, certain, and imperative, involving merely the execution of a specific duty arising from

fixed and designated facts." *Jensen v. S.C. Dept. of Social Services*, 297 S.C. 323, 377 S.E.2d 102 (1988).

*Hare*, 99 N.C. App. at 699-700, 394 S.E.2d at 236.

In our prior decision, we specifically stated that a violation of G.S. 7A-544, which provides for the protection of abused or neglected juveniles, "[could] give rise to an action for negligence." 89 N.C. App. at 197, 366 S.E.2d at 8. In *Coleman*, defendant Cooper was classified as an employee of Wake County and as a result could be subject to liability in the performance of her official duties. Accordingly, the *Coleman* court reversed the trial court's entry of summary judgment in favor of defendants Cooper and Wake County on the grounds of sovereign immunity. "Once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the same case." *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 566, 299 S.E.2d 629, 631 (1983). Since the trial court's entry of summary judgment in favor of defendant Cooper was erroneously entered on the grounds that she was a public official, we reverse and remand this cause for trial.

## II. Defendant Wake County

[2]  Plaintiff next contends that the trial court erred in granting defendant Wake County's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Plaintiff argues that this court in *Coleman, supra,* previously "recognized that Wake County [had] waived sovereign immunity to the extent it purchased liability insurance." Plaintiff contends that the liability of Wake County is "based upon respondeat superior for the negligence of defendant Cooper" and the "failure of the Defendant Wake County to have appropriate safety procedures." Plaintiff contends that the Wake County Superior Court is the proper forum for this claim and that the trial court erred in holding that the claim should be brought before the Industrial Commission. We disagree.

A county's liability for the torts of its officers and employees depends on whether the activity involved is "governmental" or "proprietary" in nature. Traditionally, a county was immune from torts committed by an employee carrying out a governmental function, but was liable for torts committed while engaged in a proprietary function. The North Carolina Supreme Court has distinguished between the two as follows:

COLEMAN v. COOPER

[102 N.C. App. 650 (1991)]

> Any activity ... which is discretionary, political, legislative
> or public in nature and performed for the public good
> in behalf of the State, rather than to itself, comes within
> the class of governmental functions. When, however, the
> activity is commercial or chiefly for the private advantage
> of the compact community, it is private or proprietary.

> Often making this distinction proves difficult. Certain activities
> are clearly governmental such as law enforcement operations
> and the operation of jails, public libraries, county fire depart-
> ments, public parks and city garbage services. Non-traditional
> governmental activities such as the operation of a golf course
> or an airport are usually characterized as proprietary func-
> tions. Charging a substantial fee to the extent that a profit
> is made is strong evidence that the activity is proprietary.
> [Citations omitted.]

*Hare*, 99 N.C. App. at 698-99, 394 S.E.2d at 235.

> Under The Tort Claims Act the North Carolina Industrial
> Commission (Commission) is "constituted a court for the pur-
> pose of hearing and passing upon tort claims against the
> ... departments, institutions, and agencies of the State." G.S.
> 143-291. The Commission is authorized to determine "whether
> or not each individual claim arose as a result of a negligent
> act of any officer, employee, involuntary servant or agent of
> the State while acting within the scope of his office, employ-
> ment, service, agency or authority, under circumstances where
> the State of North Carolina, if a private person, would be
> liable to the claimant in accordance with the laws of North
> Carolina." *Id.*

*Vaughn v. Dept. of Human Resources*, 296 N.C. 683, 685, 252 S.E.2d
792, 794 (1979). "Under the Tort Claims Act, jurisdiction is vested
in the Industrial Commission to hear claims against the State of
North Carolina for personal injuries sustained by any person as
a result of the negligence of a State employee while acting within
the scope of his employment." *Guthrie v. State Ports Authority*,
307 N.C. 522, 536, 299 S.E.2d 618, 626 (1983).

> In *Vaughn, supra*, the claimant brought an action before the
North Carolina Industrial Commission against the Department of
Human Resources alleging that the Director of Durham County
Social Services and five of his caseworkers were negligent in plac-

ing a foster child in her home carrying the cytomegalo virus when they knew that the claimant was attempting to become pregnant. The Department of Human Resources moved to dismiss the action before the North Carolina Industrial Commission on the grounds that "the Durham County Department of Social Services is not a State department and the Director and employees thereof are not State employees within the meaning of G.S. 143-291." *Id.* at 684, 252 S.E.2d at 794. The Full Commission and the Court of Appeals determined that the Industrial Commission had jurisdiction to hear and determine the claim. The Supreme Court allowed discretionary review.

In *Vaughn*, the North Carolina Supreme Court stated that "[i]n order for the Commission to assert jurisdiction over this claim there must be a showing that the Director of the Durham County Department of Social Services and his staff were acting as the 'involuntary servants or agents' of a 'State Department' under circumstances in which the State, if a private person, would be liable for the negligent acts of the named servants or agents." *Id.* at 685, 252 S.E.2d at 794, citing G.S. 143-291. The *Vaughn* court further stated that "[a]pplication of the principles of agency law and respondeat superior to the statutory scheme for the delivery of foster care services leads us to conclude that liability may exist and that the Industrial Commission may therefore 'hear and pass upon' the merits of this claim pursuant to the provisions of the Tort Claims Acts." *Id.* at 686, 252 S.E.2d at 795. We note that the *Vaughn* court stated that it "express[ed] no opinion on whether the Department of Human Resources might also be liable for negligent acts of the County Director outside the scope of his obligation to place children in foster homes. In every instance the liability of the Department of Human Resources depends upon application of the principles of agency and respondeat superior to the facts in the case under consideration." *Id.* at 692, 252 S.E.2d at 798, citing *Snow v. DeButts*, 212 N.C. 120, 193 S.E. 224 (1937).

G.S. 108A-1 requires that "[e]very county shall have a board of social services which shall establish county policies for the programs established by this Chapter in conformity with the rules and regulations of the Social Services Commission and under the supervision of the Department of Human Resources." G.S. 108A-14(5) provides that the director of social services shall "act as agent of the Social Services Commission and Department of Human Resources in relation to work required by the Social Services Com-

mission and Department of Human Resources in the county[.]" G.S. 108A-14(11) further provides that the director of social services shall "investigate reports of child abuse and neglect and to take appropriate action to protect such children pursuant to the Child Abuse Reporting Law, Article 44 of Chapter 7A[.]" "The Director of the Department of Social Services shall submit a report of alleged abuse or neglect to the central registry under the policies adopted by the Social Services Commission." G.S. 7A-548(a). The central registry of abuse and neglect cases is maintained by the Department of Human Resources. G.S. 7A-552. Finally, "a subordinate division of the state, or agency exercising statutory governmental functions like a city administrative unit, may be sued only when and as authorized by statute." *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952).

In the instant case, Wake County was acting as an agent of the Social Services Commission and the Department of Human Resources in its delivery of protective services to the decedents. A cause of action originating under the Tort Claims Act against Wake County as a subordinate division of the State, must be brought before the Industrial Commission. Accordingly, the trial court did not err in dismissing the action against Wake County. Because we have affirmed the trial court on this issue, we need not address defendants' cross assignment of error.

In summary, with respect to defendant Cooper, we reverse the entry of summary judgment in her favor and remand this cause for trial. With respect to defendant Wake County, we affirm the superior court's dismissal of this action.

Affirmed in part; reversed and remanded in part.

Judge PARKER concurs.

Judge ARNOLD concurs in part and concurs in the result as to defendant Cooper by separate opinion.

Judge ARNOLD concurring in the result.

In regard to defendant Cooper, while I agree that we are bound by the result of the Court's prior panel on the question of this defendant's liability, I strongly question the reasoning of that prior decision. Its anomalous rationale appears to allow a

claim against an employee in an individual capacity while conferring immunity from liability in a governmental capacity. Defendant's actions were clearly within this scope.

In addition to the above, parents "have the duty to take every step reasonably possible under the circumstances . . . to prevent harm to their children." *Coleman v. Cooper*, 89 N.C. App. 188, 198-99, 366 S.E.2d 2, 9, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988) (citing *State v. Walden*, 306 N.C. 466, 475, 293 S.E.2d 780, 786 (1982) ). Failure to perform this duty is negligence. From the forecast of evidence before us plaintiff was contributorily negligent as a matter of law.