HOBBS v. N.C. DEP'T OF HUM. RES.

[135 N.C. App. 412 (1999)]

KEMESHA HOBBS, MICHAEL HOBBS AND MICHELAE HOBBS BY AND THROUGH HER GUARDIAN AD LITEM, ANNE WINNER, PLAINTIFFS V. NORTH CAROLINA DEPART-MENT OF HUMAN RESOURCES, WAKE COUNTY DEPARTMENT OF SOCIAL SERVICES, WAKE COUNTY MENTAL HEALTH, DEVELOPMENTAL DISABILI-TIES AND SUBSTANCE ABUSE SERVICES, WAKE COUNTY HUMAN SERVICES, MARIA SPAULDING, INDIVIDUALLY, AND IN HER CAPACITY AS DIRECTOR OF WAKE COUNTY HUMAN SERVICES, MARY DEYAMPERT, INDIVIDUALLY, AND IN HER CAPAC-ITY AS DIRECTOR OF THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, THOMAS W. HOGAN, INDIVIDUALLY, AND IN HIS CAPACITY AS DIRECTOR OF THE WAKE COUNTY DEPARTMENT OF SOCIAL SERVICES, JAMES W. KIRKPATRICK, JR., INDIVIDUALLY, AND IN HIS CAPACITY AS DIRECTOR OF WAKE COUNTY MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUB-STANCE ABUSE SERVICES, DELICE COFFEY, INDIVIDUALLY, AND IN HER CAPACITY AS A WAKE COUNTY SOCIAL WORKER, HORACIO SANCHEZ, INDIVIDUALLY, AND IN HIS CA-PACITY AS A WAKE COUNTY SOCIAL WORKER, MARTHA F. WATERS, INDIVIDUALLY, AND IN HER CAPACITY AS A WAKE COUNTY SOCIAL WORKER, SANDRA DELOATCH, INDIVIDUALLY, AND IN HER CAPACITY AS A WAKE COUNTY SOCIAL WORKER, FILICO C. BELL, INDIVIDU-ALLY, AND IN HIS CAPACITY AS A WAKE COUNTY SOCIAL WORKER, ROSA LEECH, INDIVID-UALLY, AND IN HER CAPACITY AS A WAKE COUNTY SOCIAL WORKER, TOBIAS H. SMITH, INDIVIDUALLY, AND IN HIS CAPACITY AS A WAKE COUNTY SOCIAL WORKER, JOHN C. HARVEY, INDIVIDUALLY, AND IN HIS CAPACITY AS A WAKE COUNTY SOCIAL WORKER, DEFENDANTS

No. COA98-1086

(Filed 2 November 1999)

## 1. Appeal and Error— preservation of issues—jurisdiction

Defendants Wake County DSS, Wake County Mental Health, Developmental Disabilities and Substance Abuse Services, and Wake County Human Services could not argue on appeal that there was no statutory authority for suit against them where they failed to raise the issue in their motion to dismiss in the trial court and stipulated to the Court of Appeals that they were properly before the trial court.

## 2. Immunity— public duty doctrine—foster child placement—special relationship

Dismissal of an action for negligence in the placement of a foster child into plaintiffs' home for failure to state a claim was inappropriate as to Wake County DSS, Wake County Mental Health, Developmental Disabilities and Substance Abuse Services, and Wake County Human Services where those defend-ants argued that they were protected by the public duty doctrine, but the facts arguably suggested a special relationship and spe-cial duty in that the parties had considerable direct contact and discussion, defendants visited in plaintiffs' home, and plaintiffs

**HOBBS v. N.C. DEP'T OF HUM. RES.**

[135 N.C. App. 412 (1999)]

alleged that they specifically asked and specifically were given assurances that the foster child would not be a threat to their small daughter.

### 3. Public Officers and Employees— official capacity suits— redundant

The dismissal of negligence claims against individuals in their official capacities was inappropriate where the dismissal of claims against the agencies was inappropriate. Official capacity suits are merely another way of pleading an action against the government entity and are redundant.

### 4. Public Officers and Employees— social workers—public officials

Dismissal of negligence claims against certain defendants in their individual capacities arising from the placement of a foster child was affirmed where these defendants were acting as public officials since they were acting for and representing the director of social services. Foster children and the families who provide homes for them present a wide range of circumstances, staff members who work with foster children and families certainly cannot rely on fixed and designated facts, and the process must involve defendants' personal deliberation, decision and judgment. Taking into account the language of N.C.G.S. § 108A-14(b) and *Meyer v. Walls*, 347 N.C. 548, these defendants were acting as public officials who cannot be held liable for mere negligence and there were no allegations of corrupt or malicious acts or omissions or of acts beyond the scope of their duties.

Appeal by plaintiffs from order entered 11 May 1998 by Judge James C. Spencer, Jr., in Wake County Superior Court. Heard in the Court of Appeals 29 April 1999.

*Elizabeth F. Kuniholm, by Elizabeth F. Kuniholm and Toni M. Benham, for plaintiff-appellants.*

*Wake County Attorney's Office, by Michael R. Ferrell and Corinne G. Russell, for defendant-appellees.*

HUNTER, Judge.

The record in this case tends to show that the adult plaintiffs, Kemesha and Michael Hobbs ("plaintiffs"), applied and became licensed to be foster parents in Wake County in the spring of 1993.

The licensing process was rather involved. Plaintiffs filled out considerable paperwork and provided information about themselves and their family life, including information about their daughter, Michelae, who was two-years-old at the time. Staff members of the Wake County Department of Social Services ("Wake County DSS") made an evaluation visit to the plaintiffs' home and met young Michelae. Plaintiffs attended meetings and training sessions, purchased additional insurance and fulfilled all the requirements to become foster parents.

In the summer of 1993, staff members of the Wake County DSS approached the couple about the placement of a particular child, a twelve-year-old boy, in their home. Over a period of weeks, one or both of the plaintiffs met with Wake County DSS staff members to discuss the child, his needs and whether the plaintiffs' home would be a suitable placement for him. At the time of these various meetings, Wake County DSS staff knew, but failed to inform plaintiffs, that the child had been a victim of sexual abuse and had been exposed to an environment in which his sisters were also victims of sexual abuse. Nevertheless, the child was placed with plaintiffs in August 1993.

In the fall of 1993, plaintiffs discovered that the child had sexually assaulted their daughter. The couple filed suit in 1996, alleging negligence in the placement of the child in their home. The complaint asserts that the defendants as professionals knew or should have known that a child who has been a victim of sexual abuse and who has lived in an environment of sexual assault is likely to re-enact the abuse on younger, more vulnerable children.

Summonses issued in October 1996 were returned as to all defendants except Rosà Leech. Plaintiffs filed a voluntary dismissal without prejudice of defendants North Carolina Department of Human Resources; Mary Deyampert, individually and in her capacity as director of the North Carolina Department of Human Resources; Maria Spaulding, individually; Thomas Hogan, individually; James W. Kirkpatrick, Jr., individually; and Horacio Sanchez, individually and in his capacity as a social worker. Defendants before us are Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; Wake County Human Services; Thomas W. Hogan in his capacity as director of the Wake County DSS; James W. Kirkpatrick, Jr., in his capacity as director of Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; Maria Spaulding in her capacity as director of Wake County

Human Services; and Delice Coffey, Martha F. Waters, Sandra Deloatch, Filico C. Bell, Tobias H. Smith and John C. Harvey, all six of whom are named in their official and individual capacities.

In May 1998, the trial court entered an order granting defendants' motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiffs appeal and assign error to the trial court's conclusion that the complaint fails to state a claim upon which relief can be granted.

**[1]** The complaint names, among others, Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services. These three entities argue they may not be sued as individual entities. Citing N.C. Gen. Stat. §§ 108A (1997), 122C (1996) and 153A-77 (1991), they contend there is no statutory authority for lawsuits against the defendants Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services. This amounts to an argument that the trial court had no jurisdiction over these defendants. Contrary to this argument, however, these defendants stipulated in the record before us that they were properly before the trial court and that the trial court had jurisdiction over them. Further, in their motion to dismiss, these parties cited N.C.R. Civ. P. 12(b)(6) (failure to state a claim) and N.C.R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), but they did not cite N.C.R. Civ. P. 12(b)(2), which sets out "lack of jurisdiction over the person" as grounds for dismissal. "[A] defendant may raise the defense of lack of jurisdiction over his person by a pre-answer motion or by a responsive pleading. If the defendant fails to proceed in this manner, the defense of lack of jurisdiction is waived." *Harris v. Pembaur*, 84 N.C. App. 666, 669-70, 353 S.E.2d 673, 676 (1987) (citation omitted). We also note our Supreme Court has held that "an action against a county agency which directly affects the rights of the county is in fact an action against the county." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). Having failed to raise this issue in their motion and having stipulated to this Court that they were properly before the trial court, these defendants may not now argue they are not subject to suit.

**[2]** Therefore, we must determine whether the trial court properly dismissed the complaint against defendants Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services.

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.' " A motion to dismiss pursuant to Rule 12(b)(6) should not be granted " *'unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.'* "

*Isenhour v. Hutto*, 350 N.C. 601, 604-05, 517 S.E.2d 121, 124 (1999) (citations omitted) (emphasis in original).

Defendants did not file a response to plaintiffs' assertions; rather, they argue they are protected by the public duty doctrine.

Our Supreme Court adopted the public duty doctrine and the two exceptions to it in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992):

> The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

> "The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort, even to those who may be the particular seekers of protection based on specific hazards, could and would inevitably determine how the limited police resources . . . should be allocated and without predictable limits."

While this policy is a necessary and reasonable limit on liability, exceptions exist to prevent inevitable inequities to certain individuals. There are two generally recognized exceptions to the public duty doctrine: (1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) "when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the

promise of protection is causally related to the injury suffered." Although we have not heretofore adopted the doctrine with its exceptions, we do so now.

*Id.* at 370-71, 410 S.E.2d at 901-02 (citations omitted). Since *Braswell,* our Courts have applied the public duty doctrine in other contexts. *See Stone v. N.C. Dept. of Labor,* 347 N.C. 473, 495 S.E.2d 711, *reh'g denied,* 348 N.C. 79, 502 S.E.2d 836, *cert. denied,* 525 U.S. 1016, 142 L. Ed. 2d 449 (1998) (workplace inspections by state OSHA employees); *Simmons v. City of Hickory,* 126 N.C. App. 821, 487 S.E.2d 583 (1997) (home inspection by city building inspectors); *Prevette v. Forsyth County,* 110 N.C. App. 754, 431 S.E.2d 216, *disc. review denied,* 334 N.C. 622, 435 S.E.2d 338 (1993) (release of dogs by animal control office and shelter).

Prior to *Braswell* and its progeny, this Court held that a violation of N.C. Gen. Stat. § 7A-544 (1995), which provides for the protection of abused or neglected juveniles, may give rise to an action for negligence. *Coleman v. Cooper,* 89 N.C. App. 188, 366 S.E.2d 2, *disc. review denied,* 322 N.C. 834, 371 S.E.2d 275 (1988). *See also Coleman v. Cooper,* 102 N.C. App. 650, 403 S.E.2d 577, *disc. review denied,* 329 N.C. 786, 408 S.E.2d 517 (1991). Based on the case law of this state, it is clear that under some circumstances, negligence claims by abused or neglected juveniles against agencies and employees charged with their care may be actionable.

The provision of foster care is, without doubt, for the public good and comes under the broad umbrella of the public duty doctrine. But, by its nature, it also involves circumstances in which the agencies, officials and employees involved in the administration of foster care develop special relationships with the children and families with whom they work and, pursuant to N.C. Gen. Stat. § 7A-544 and the *Coleman* cases, have special duties.

In *Braswell,* the issue was whether remarks allegedly made by the sheriff to a woman created a special duty to protect the woman from her husband. The facts in that case show that a woman found evidence that her estranged husband, a deputy sheriff, had plans to kill her. She shared the information with the sheriff and expressed her fears that she would be killed. The sheriff, according to testimony, assured her that " 'he would see she got back and forth to work safely . . . [and] that his men would be keeping an eye on her.' " *Braswell,* 330 N.C. at 369, 410 S.E.2d at 900. A few days later, the woman's husband shot her to death while she was on a lunchtime

HOBBS v. N.C. DEP'T OF HUM. RES.

[135 N.C. App. 412 (1999)]

errand. The administrator of her estate sued the sheriff for negligent failure to protect. Citing the public duty doctrine as set out above, our Supreme Court found that the sheriff had no specific duty to protect the woman from her husband. The *Braswell* Court agreed with defense arguments that the sheriff's alleged statements "were general words of comfort and assurance, commonly offered by law enforcement officers in situations involving domestic problems, and that such promises were merely gratuitous and hence not sufficient to constitute an actual promise of safety." *Braswell*, 330 N.C. at 371-72, 410 S.E.2d at 902.

Even so, the *Braswell* Court acknowledged that the sheriff's promise to the woman to protect her as she went to and from work was arguably specific enough to create a special duty exception to the public duty doctrine. *Braswell*, 330 N.C. at 372, 410 S.E.2d at 902. *See also Isenhour*, 350 N.C. at 606, 517 S.E.2d at 125. However, the *Braswell* Court did not pursue that point since the victim in that case was undisputedly killed while on a midday errand, not while traveling to or from work, "and hence was outside the scope of protection arguably promised by [the sheriff]." *Braswell*, 330 N.C. at 372, 410 S.E.2d at 902.

Our Supreme Court has recently applied the special relationship exception to the public duty doctrine in *Isenhour*. In that case, a child was struck by a car and killed as he attempted to cross the street after having been signaled by a school-crossing guard that it was safe to cross. The child's family sued the city and the school-crossing guard alleging wrongful death. Our Supreme Court held that the city "by providing school crossing guards, has undertaken an affirmative, but limited, duty to protect certain children, at certain times, in certain places" and found the public duty doctrine inapplicable under those circumstances. *Isenhour*, 350 N.C. at 608, 517 S.E.2d at 126. The *Isenhour* Court also noted that "the relationship between the crossing guard and the children is direct and personal, and the dangers are immediate and foreseeable." *Id*. The *Isenhour* Court found the city and the crossing guard subject to suit.

We must determine whether one or both exceptions to the public duty doctrine apply to the facts before us.

In this case, plaintiffs allege that they "specifically asked whether it was safe" to have the foster child in question placed in their home with their toddler daughter. They assert they "were told that it would be safe[.]" Citing *Braswell*, 330 N.C. at 371-72, 410 S.E.2d at 902,

**HOBBS v. N.C. DEP'T OF HUM. RES.**

[135 N.C. App. 412 (1999)]

defendants argue that such assurances were gratuitous comments that would commonly be made in the context of describing a foster child to his prospective foster family and not "sufficient to create an actual promise of safety to the family." We do not agree that the facts before us are so simply analogous to those of *Braswell*.

In the case at bar, the complaint states that representatives of Wake County DSS visited the plaintiffs' home to decide if it was suitable for the placement of a foster child. The complaint states that representatives of Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services met with one or both plaintiffs at least three times to discuss placement of the designated foster child in their home. The complaint refers to a "team meeting" attended by the plaintiffs and nine representatives of defendants Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services to discuss the placement of the foster child. Treating plaintiffs' assertions as true, as we must, *Isenhour*, 350 N.C. at 604, 517 S.E.2d at 124, we conclude that these were purposeful meetings, not casual conversations. The meetings addressed the serious matter of whether placement of the foster child in plaintiffs' home was appropriate and were not a setting in which one might disregard the assurances as gratuitous comments. These facts distinguish the case before us from *Braswell*.

In light of *Isenhour*, the facts before us arguably suggest a special relationship between the plaintiffs and the defendants. The parties had considerable direct contact and discussion. Defendants visited in plaintiffs' home. The facts also arguably suggest a special duty in that, as discussed above, plaintiffs allege they specifically asked and specifically were given assurances that the foster child would not be a threat to their small daughter.

In the context of direct contact and purposeful meetings, were defendants' assurances gratuitous reassurance or did they create a special duty? Was there a special relationship between defendants and the prospective foster parents? These questions make dismissal at the pleading stage inappropriate.

[3] We now turn to the individuals named as defendants in only their official capacities. Those before us are Thomas W. Hogan in his capacity as director of Wake County DSS; James W. Kirkpatrick, Jr., in his capacity as director of Wake County Mental Health,

Developmental Disabilities and Substance Abuse Services; and Maria Spaulding in her capacity as director of Wake County Human Services.

"[O]fficial-capacity suits ' "generally represent only another way of pleading an action against an entity of which an officer is an agent." ' Thus, where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." *Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21 (1997) (citations omitted). "[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity." *Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) (citation omitted). "A claim against [defendants DSS director, DSS supervisor and social worker] in their official capacities is a claim against DSS[.]" *Meyer v. Walls*, 347 N.C. at 111, 489 S.E.2d at 888. The claims against defendants Hogan, Kirkpatrick and Spaulding in their official capacities are effectively claims against Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; and Wake County Human Services. For the reasons explained above, the trial court's dismissal was inappropriate.

Finally, we turn to the defendants before us who were sued in their official and individual capacities. They are Delice Coffey, Martha F. Waters, Sandra Deloatch, Filico C. Bell, Tobias H. Smith and John C. Harvey. Our analysis with regard to these six defendants in their official capacities is identical to the analysis set out above, and the complaint against them in their official capacities was improperly dismissed.

[4] In addressing the complaint against defendants Coffey, Waters, Deloatch, Bell, Smith and Harvey in their individual capacities, we must address the question of whether they are properly designated as public officials or public employees.

Public officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties; public employees can.

"It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged

and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties. . . ."

*Meyer*, 347 N.C. at 112, 489 S.E.2d at 888 (citations omitted).

Our Supreme Court in *Meyer* set out the test for determining whether an individual is a public official or a public employee.

> "A public officer is someone whose position is created by the constitution or statutes of the sovereign. 'An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power.' Officers exercise a certain amount of discretion, while employees perform ministerial duties. Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.' "

*Meyer*, 347 N.C. at 113, 489 S.E.2d at 889 (citations omitted).

N.C. Gen. Stat. § 108A-14 recognizes the position of "county director of social services" and gives the director the duty and responsibility, *inter alia*, "[t]o accept children for placement in foster homes and to supervise placements for so long as such children require foster home care[.]" N.C. Gen. Stat. § 108A-14(a)(12) (Cum. Supp. 1998). Unquestionably, pursuant to the statute, a county director of social services is a public officer as defined in *Meyer*. The statute also gives the director the authority to "delegate to one or more members of his staff the authority to act as his representative." N.C. Gen. Stat. § 108A-14(b) (Cum. Supp. 1998). This statutory language contemplates that staff members of departments of social services may be responsible for duties identified in the statute. It creates a structure under which department of social services staff members may function as public officers.

Foster children and the families who provide homes for them present a wide range of circumstances. Staff members who work with foster children and families certainly cannot rely on " 'fixed and designated facts.' " *Meyer*, 347 N.C. at 113, 489 S.E.2d at 889 (citations omitted). In the case before us, for example, the complaint states that defendants Bell and Smith visited plaintiffs' home to determine if it was suitable for the placement of a foster child. The complaint also states that one or more defendants met with one or both adult plain-

tiffs at least three times to discuss placement of the designated foster child in the plaintiffs' home. Common sense tells us that the home inspection and the meetings required the participating defendants to assess the individual characteristics and circumstances of the foster child and the prospective foster family. The process must have involved defendants' "personal deliberation, decision and judgment." *Meyer*, 347 N.C. at 113, 489 S.E.2d at 889. It surely involved more than " 'the execution of a specific duty arising from fixed and designated facts.' " *Id.* Taking into account the language of N.C. Gen. Stat. § 108A-14(b) and *Meyer*, we conclude that defendants Coffey, Waters, Deloatch, Bell, Smith and Harvey were acting as public officials since they were acting for and representing the director of social services. Thus, we hold that defendants Coffey, Waters, Deloatch, Bell, Smith and Harvey may not be held individually liable.

As noted above, "[p]ublic officials cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties[.]" *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888. "[A]n official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties." *Id.* Plaintiffs' complaint contains no allegations of corrupt or malicious acts or omissions by defendants and no allegations of acts outside or beyond the scope of defendants' duties.

We are aware that plaintiffs' complaint characterizes defendants Coffey, Waters, Deloatch, Bell, Smith and Harvey as social workers. We are further aware that this Court, in *Coleman*, 102 N.C. App. 650, 403 S.E.2d 577, treated a social worker as a public employee. *Coleman*, however, was decided before our Supreme Court embraced the test set out in *Meyer* and before N.C. Gen. Stat. § 108A-14 was amended to provide that a county social services director may "delegate to one or more members of his staff the authority to act as his representative." N.C. Gen. Stat. § 108A-14(b). Based on *Meyer* and N.C. Gen. Stat. § 108A-14(b), we conclude we are not bound by *Coleman* on this issue.

The trial court's dismissal is reversed as to defendants Wake County DSS; Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; Wake County Human Services; Thomas W. Hogan in his official capacity as director of the Wake County DSS; James W. Kirkpatrick, Jr., in his official capacity as director of Wake County Mental Health, Developmental Disabilities and Substance Abuse Services; Maria Spaulding in her official capac-

ity as director of Wake County Human Services; Delice Coffey in her official capacity as a Wake County social worker; Martha F. Waters in her official capacity as a Wake County social worker; Sandra Deloatch in her official capacity as a Wake County social worker; Filico C. Bell in his official capacity as a Wake County social worker; Tobias H. Smith in his official capacity as a Wake County social worker; and John C. Harvey in his official capacity as a Wake County social worker.

The trial court's dismissal as to defendants Coffey, Waters, Deloatch, Bell, Smith and Harvey in their individual capacities is affirmed.

Affirmed in part, reversed in part and remanded.

Judges WYNN and WALKER concur.