SYBIL SMITH, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR BRITTANY SMITH, A MINOR, PLAINTIFF v. JACKSON COUNTY BOARD OF EDUCATION, ELIZABETH BALCEREK, INDIVIDUALLY AND AS AN EMPLOYEE OF JACKSON COUNTY BOARD OF EDUCATION, JOSEPH CARROLL BROOKS, INDIVIDUALLY AND AS AN EMPLOYEE OF JACKSON COUNTY BOARD OF EDUCATION, JAMES L. CRUZAN, INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF OF JACKSON COUNTY, CHARLES R. HESS, III, INDIVIDUALLY AND AS AN EMPLOYEE OF THE SHERIFF OF JACKSON COUNTY, JEREMY STEWART, AND WESTERN SURETY COMPANY, SURETY FOR JAMES L. CRUZAN, SHERIFF OF JACKSON COUNTY, DEFENDANTS

No. COA03-233

(Filed 15 February 2005)

**1. Appeal and Error— appealability—interlocutory order— denial of motion to dismiss—substantial right**

Although ordinarily the denial of a motion to dismiss is an interlocutory order from which there may be no appeal, this case is immediately appealable because it involves a substantial right when defendants base their appeal on the public duty doctrine and sovereign immunity.

SMITH v. JACKSON CTY. BD. OF EDUC.

[168 N.C. App. 452 (2005)]

**2. Schools and Education; Police Officers— school resource officer—public duty doctrine—civil conspiracy—intentional infliction of emotional distress—duty to report child abuse—breach of fiduciary duty—negligent supervision, hiring, and retention**

The trial court did not err by denying motions by defendants school resource officer and the sheriff to dismiss plaintiff's amended complaint and the cross-claims of defendants Board of Education and school principal on the ground that the claims are barred by the public duty doctrine in an action where plaintiff alleged that defendant teacher manipulated a 14-year-old female into having a sexual relationship with an 18-year-old student and then attempted to videotape her having sex with the student, because: (1) the public duty doctrine does not apply to plaintiff's claims against the school resource officer for civil conspiracy under N.C.G.S. § 99D-1 and intentional infliction of emotional distress since these claims were not based on negligence; (2) in regard to the claim under N.C.G.S. § 99D-1 for interference with civil rights, the allegations reflect affirmative conduct by the school resource officer directly injuring the minor female and do not constitute only the failure to prevent a third person's harmful conduct; (3) in regard to the intentional infliction of emotional distress claim, plaintiff included the necessary allegations of calculated conduct on the part of the school resource officer directed at the minor female to rise above mere aggravated negligence that cause the public duty doctrine to cease to apply; (4) in regard to the school resource officer's failure to report knowledge of defendant teacher's actions in promoting a sexual relationship between two students and in failing to notify administrative staff of the minor female's absence from school, the duty to report child abuse is not the type of discretionary law enforcement function shielded by the public duty doctrine given the mandatory language and broad application of N.C.G.S. § 7B-301 to the general public; (5) to the extent the claims of plaintiff, the Board of Education, and the school principal are based on negligence other than a failure to report abuse, the amended complaint and cross-claims sufficiently allege that the facts of this case fall within the special duty exceptions to the public duty doctrine when the school resource officer undertook to provide protective services not the public generally, but to an identifiable group of students at the pertinent school, including the 14-year-old female, during school hours; (6) in regard to the claim for

breach of fiduciary duty, the school resource officer failed to challenge on appeal plaintiff's allegations regarding the existence of a fiduciary duty; and (7) in regard to claims against the sheriff for negligent supervision, hiring, and retention of the school resource officer, the question of whether the parties have adequately alleged those claims is not before the Court of Appeals.

### 3. Pleadings— motion to amend—adding defendants

The trial court did not abuse its discretion by allowing plaintiff to amend her complaint a second time to add sheriff Cruzan in his individual capacity and Western Surety, the surety of Cruzan's official bond, in an action where plaintiff alleged that Cruzan negligently supervised and retained Hess, a school resource officer who knew of a teacher's improper conduct regarding students but failed to report it, because: (1) in regard to adding claims against Cruzan individually, the proposed amended complaint alleged willfulness and a factual basis for that general allegation; and (2) N.C.G.S. § 58-76-5 allows a plaintiff to maintain suit against a public officer and the surety on his official bond for acts of negligence in performing his official duties, and immunity is immaterial with respect to a claim on a bond under N.C.G.S. § 58-76-5.

Appeal by defendants James L. Cruzan and Charles R. Hess, III from orders entered 7 November 2002 and 15 November 2002 by Judge J. Marlene Hyatt in Jackson County Superior Court. Heard in the Court of Appeals 17 March 2004.

*McGuire, Wood & Bissette, P.A., by Joseph P. McGuire and Mary E. Euler, for plaintiff-appellee.*

*Benjamin R. Olinger, Jr.; and Long, Parker, Warren & Jones, P.A., by Robert B. Long, for defendant-appellant Charles R. Hess, III.*

*Lovejoy & Bolster, P.A., by Jeffrey S. Bolster, for defendant-appellant James L. Cruzan.*

*Roberts & Stevens, P.A., by Christopher Z. Campbell and K. Dean Shatley, II, for defendant-appellee Jackson County Board of Education.*

*Cranfill, Sumner & Hartzog, L.L.P., by Ann S. Estridge, for defendant-appellee Elizabeth Balcerek.*

## SMITH v. JACKSON CTY. BD. OF EDUC.

[168 N.C. App. 452 (2005)]

*No brief filed on behalf of defendant-appellee Joseph Carroll Brooks.*

*No brief filed on behalf of defendant-appellee Jeremy Stewart.*

*No brief filed on behalf of defendant-appellee Western Surety Company.*

GEER, Judge.

In this case, plaintiff Sybil Smith, individually and as guardian ad litem for her minor daughter Brittany Smith, has alleged that defendant Joseph Brooks, a teacher at Brittany's school, manipulated her 14-year-old daughter into having a sexual relationship with an 18-year-old student, defendant Jeremy Stewart, and then attempted to videotape her having sex with the student. According to plaintiff, the school resource officer—defendant Charles R. Hess, III—knew of Brooks' conduct, but failed to report it. Plaintiff further alleges that Hess' employer, defendant Jackson County Sheriff James L. Cruzan, negligently supervised and retained Hess. The school defendants— defendant Jackson County Board of Education and Brittany's principal (defendant Elizabeth Balcerek)—asserted cross-claims against defendants Hess and Cruzan.

Hess and Cruzan appeal from the trial court's denial of their motion to dismiss plaintiff's complaint and the school defendants' cross-claims based on the public duty doctrine. Because we find that the claims are either beyond the scope of the public duty doctrine or fall within one of the doctrine's exceptions, we affirm.

### Facts

In considering, as here, a motion to dismiss, we must treat as true the factual allegations of plaintiff, the Board of Education, and Balcerek. *Lovelace v. City of Shelby*, 351 N.C. 458, 459, 526 S.E.2d 652, 653 (2000). Plaintiff's amended complaint alleges the following facts.

During the 2000-2001 school year, Brittany was a ninth-grade student at the Blue Ridge School, a school operated by the Jackson County Board of Education. Brittany took a physical education class and a health class taught by Brooks. Jeremy was a twelfth-grade student and a member of one or more athletic teams coached by Brooks.

During the spring semester, Brooks encouraged Jeremy to develop a personal, dating, and sexual relationship with Brittany.

Early in the semester, Brooks told Jeremy that he could use Brooks' school office, home, and automobile to facilitate the sexual relationship. By 1 March 2001, "with the prompting and arrangements of Brooks," Jeremy and Brittany had begun having a sexual relationship. They used Brooks' office during school hours and Brooks' home both during and after school hours. Brooks excused Jeremy from athletic practice and obtained Brittany's excused absence from class or study hall so that the students could engage in their sexual relationship.

Defendant Hess, a deputy sheriff with the Jackson County Sheriff's Department, was the school resource officer and a longtime friend of Brooks. The complaint alleges that Hess was aware that Brooks was promoting a sexual relationship between Brittany and Jeremy and was allowing Jeremy to use Brooks' office and home for that purpose. Hess did not report Brooks' actions to the students' parents, to school officials, to the Sheriff's Department, or to the county Department of Social Services.

On 25 May 2001, Brooks arranged for Jeremy to drive Brittany to Brooks' home during school hours for the purpose of engaging in sex. After arriving at Brooks' home, Jeremy discovered Brooks hiding in the closet of his bedroom. The complaint alleges that Brooks had intended to surreptitiously watch, listen, and videotape the students having sex. Jeremy and Brittany immediately left and drove to Brittany's home. Brooks followed them there, broke into the house, screamed at the two of them, and then offered them $500.00 if they would allow him to watch them have sex in the bedroom of Brittany's parents. Jeremy and Brittany refused and returned to school.

When they arrived at the school, Jeremy and Brittany encountered Hess in the hall. Hess chastised both students for leaving school, but did not investigate their absence, notify their parents of their absence, or take any other appropriate disciplinary or official action. Later that day, Hess found Brittany crying in a hall at the school. Hess escorted her to Brooks' office, where Brooks sought to obtain her silence about the incident earlier that day.

Brooks subsequently paid Jeremy money to remain silent and directed Jeremy to pay a part of the sum to Brittany so that she would remain silent as well. The complaint alleges that "Brooks had surreptitiously set up a hidden tape-recorder and camera to audiotape and videotape Stewart having sex with Brittany, and actually used the tape recorder and camera to audiotape and videotape students engaged in sex in his office and/or home."

Based on these allegations, plaintiff brought suit on 31 January 2002 against the Board of Education, the school's principal Balcerek (individually and as an employee of the Board), Brooks (individually and as an employee of the Board), Cruzan "in his capacity as Sheriff of Jackson County," Hess (individually and as an employee of the Sheriff of Jackson County), and Jeremy. With respect to the causes of action pertinent to this appeal, plaintiff asserted claims against Hess for negligent performance of law enforcement duties, breach of fiduciary duty, negligent infliction of emotional distress, intentional infliction of emotional distress, and civil conspiracy to deprive Brittany of her civil rights as a female, in violation of N.C. Gen. Stat. § 99D-1 (2003). Plaintiff asserted a claim against Cruzan for negligent supervision and retention of Hess.

Plaintiff subsequently filed an amended complaint on or about 28 March 2002. The defendant Board of Education and Balcerek each brought cross-claims for indemnification or contribution against Hess and Cruzan. Hess and Cruzan moved to dismiss the amended complaint and the cross-claims, arguing that the claims were barred by the public duty doctrine and immunity.

On 15 August 2002, plaintiff moved to amend the complaint a second time in order to (1) sue defendant Cruzan in his individual capacity as well as his official capacity and (2) to add Cruzan's surety as an additional party so as to assert a claim under N.C. Gen. Stat. § 58-76-5 (2003). Defendant Cruzan opposed the motion to amend.

On 7 November 2002, Judge J. Marlene Hyatt allowed plaintiff to amend her complaint and on 15 November 2002, Judge Hyatt denied Cruzan's and Hess' motions to dismiss the first amended complaint and the cross-claims. Defendants Hess and Cruzan filed timely notices of appeal from the denial of the motion to dismiss based on the public duty doctrine. Cruzan has also appealed from the order allowing the motion to amend on the ground that the added claims are barred by immunity. On 23 April 2003, this Court stayed the appeal pending resolution of defendant Balcerek's proceedings in bankruptcy court. The Court subsequently lifted the stay and appellants were ordered to file briefs.

## Interlocutory Appeal

[1] As a preliminary matter, we note that ordinarily the denial of a motion to dismiss is an interlocutory order from which there may be no immediate appeal. *Block v. County of Person*, 141 N.C. App. 273,

276, 540 S.E.2d 415, 418 (2000). Since, however, defendants base their appeal on the public duty doctrine and sovereign immunity, their appeal involves a substantial right warranting immediate appellate review. *Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 403, 442 S.E.2d 75, 77, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994).

## Motion to Dismiss

[2] Defendants Hess and Cruzan contend that the trial court erred in denying their motions to dismiss plaintiff's amended complaint and the cross-claims of the Board of Education and Balcerek on the ground that the claims are barred by the public duty doctrine.[1] "A motion to dismiss pursuant to Rule 12(b)(6) should not be granted *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" *Isenhour v. Hutto*, 350 N.C. 601, 604-05, 517 S.E.2d 121, 124 (1999) (internal quotation marks omitted).

The Supreme Court first adopted the public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991) (internal citations omitted):

> The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act.

The Court has, however, limited the application of this doctrine "to the facts of *Braswell*." *Lovelace*, 351 N.C. at 461, 526 S.E.2d at 654. Accordingly, "[a]s applied to local government, [the Supreme] Court has declined to expand the public duty doctrine beyond agencies other than local law enforcement departments exercising their general duty to protect the public." *Wood v. Guilford County*, 355 N.C. 161, 166-67, 558 S.E.2d 490, 495 (2002).

On remand from the Supreme Court's decision in *Lovelace*, this Court recognized that "[t]he public duty doctrine is simply meant to

---

1. Hess, in his appellant's brief, also urges that the claims should have been dismissed based on public official immunity. Since his assignment of error was expressly limited to the public duty doctrine, his immunity arguments are not properly before us, and we do not consider them. *See* N.C.R. App. P. 10(a) ("Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.").

**SMITH v. JACKSON CTY. BD. OF EDUC.**

[168 N.C. App. 452 (2005)]

provide protection to local law enforcement officials and the municipalities for which they work in a narrow set of circumstances." *Lovelace v. City of Shelby*, 153 N.C. App. 378, 386, 570 S.E.2d 136, 141, *disc. review denied*, 356 N.C. 437, 572 S.E.2d 785 (2002). After reiterating that the Supreme Court had limited the public duty doctrine to the facts of *Braswell*, we observed that *Braswell* applied the public duty doctrine to a suit based on negligence "for failure to provide protection to a specific individual from the criminal acts of another." *Id.* at 385, 570 S.E.2d at 140. *See also Block*, 141 N.C. App. at 283, 540 S.E.2d at 422 (holding that the public duty doctrine "will not be expanded to local government agencies other than law enforcement departments exercising their general duty to protect the public"). Keeping these limitations in mind, we consider the applicability of the public duty doctrine with respect to each of the claims asserted by plaintiff, the Board of Education, and Balcerek.

### A. Intentional Tort Claims Asserted Against Hess

Plaintiff has sued Hess for civil conspiracy in violation of N.C. Gen. Stat. § 99D-1[2] and intentional infliction of emotional distress. Because these claims are not based on negligence, the public duty doctrine does not apply.

As already mentioned, the Supreme Court held in *Lovelace* that "the public duty doctrine, as it applies to local government, is limited to the facts of *Braswell*." *Lovelace*, 351 N.C. at 461, 526 S.E.2d at 654. *Braswell* involved a claim against a sheriff for "negligent failure to protect" the victim from a third party's criminal acts. *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901. Accordingly, "where the conduct complained of rises to the level of an intentional tort[,] . . . the public duty doctrine cease[s] to apply." *Clark*, 114 N.C. App. at 406, 442 S.E.2d at 79. It is not, however, sufficient to avoid the doctrine that the conduct—otherwise alleged to be negligent—is also alleged to be grossly negligent, willful, or wanton. *Id.*

In addition to considering whether the underlying claim lies in negligence—regardless whether aggravated—a trial court must also consider whether the cause of action rests on the failure to protect the victim from the acts of another or is the direct misconduct of the

---

2. N.C. Gen. Stat. § 99D-1 authorizes a civil action if "[t]wo or more persons, motivated by . . . gender, but whether or not acting under color of law, conspire to interfere with the exercise or enjoyment by any other person or persons of a right secured by the Constitutions of the United States or North Carolina, or of a right secured by a law of the United States or North Carolina that enforces, interprets, or impacts on a constitutional right . . . ."

defendant. As this Court explained in *Moses v. Young*, 149 N.C. App. 613, 616, 561 S.E.2d 332, 334, *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002):

> An exhaustive review of the public duty doctrine as applied in North Carolina reveals no case in which the public duty doctrine has operated to shield a defendant from acts directly causing injury or death. Rather, the application of the public duty doctrine in this State has been confined to cases where the defendant's actions proximately or indirectly result in injury.

*See also* 63C Am. Jur. 2d *Public Officers and Employees* § 248 (1997) ("[T]he public duty rule applies only to situations in which a plaintiff has been directly harmed by the conduct of a third person and only indirectly by a public employee's dereliction of a .duty—a duty imposed on him or her solely by his or her contract of employment—to interrupt or prevent the third person's harmful activity.").

Plaintiff's claim under N.C. Gen. Stat. § 99D-1 for interference with civil rights—requiring proof that Hess' acts were "motivated by race, religion, ethnicity, or gender"—involves intentional conduct not covered by the public duty doctrine. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 141 L. Ed. 2d 633, 649, 118 S. Ct. 2257, 2266 (1998) ("Sexual harassment under Title VII presupposes intentional conduct."). In addition, plaintiff has specifically alleged that Hess—acting with Brooks and Jeremy—"undertook a course of conduct" to prey on Brittany's status as a 14-year-old female and "to conceal from law enforcement and school authorities their manipulation and exploitation of Brittany." These allegations reflect affirmative conduct by Hess directly injuring Brittany and do not constitute only the failure to prevent a third person's harmful conduct. Accordingly, the trial court properly denied defendant Hess' motion to dismiss the N.C. Gen. Stat. § 99D-1 claim.

It is well-established that a claim for intentional infliction of emotional distress is, as the name of the tort suggests, an intentional tort. *See, e.g., Wells v. N.C. Dep't of Corr.*, 152 N.C. App. 307, 321, 567 S.E.2d 803, 813 (2002) ("Moreover, because intentional infliction of emotional distress is an intentional tort, [defendants] were not entitled to immunity as to this claim."); *Hawkins v. State*, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242 (accord), *disc. review improvidently allowed*, 342 N.C. 188, 463 S.E.2d 79 (1995). Nevertheless, this Court has also held that the public duty doctrine applies to a claim for intentional infliction of emotional distress when "plaintiffs are alleging

substantially the same conduct used to support the claim of negligence against the defendants." *Simmons v. City of Hickory*, 126 N.C. App. 821, 825, 487 S.E.2d 583, 587 (1997). In affirming the dismissal of a claim for intentional infliction of emotional distress based on the public duty doctrine, this Court rested its decision on the fact that the plaintiffs' claim was based solely on the defendant inspectors' failure to discover code violations and other defects in their house. *Id.* at 826, 487 S.E.2d at 587. In *Little v. Atkinson*, 136 N.C. App. 430, 434, 524 S.E.2d 378, 381, *disc. review denied*, 351 N.C. 474, 543 S.E.2d 492 (2000), this Court clarified *Simmons*, explaining that a plaintiff may avoid dismissal under the public duty doctrine of an intentional infliction of emotional distress claim by "alleg[ing] any type of calculated conduct on the part of defendants directed at the plaintiffs which would establish the element of intent in a claim for intentional infliction of emotional distress."

Here, plaintiff has included the necessary allegations of "calculated conduct" on the part of Hess directed at Brittany to rise above mere aggravated negligence and cause the public duty doctrine to cease to apply. The motion to dismiss was, therefore, properly denied as to the intentional infliction of emotional distress claim.

B. Negligence Claims Alleged against Hess

Plaintiff has asserted two claims against Hess based on negligence: negligent performance of law enforcement duties and negligent infliction of emotional distress. Specifically, with respect to each claim, plaintiff alleges that Hess was negligent (1) in failing to report knowledge of Brooks' actions in promoting a sexual relationship between Jeremy and Brittany and (2) in failing to notify administrative staff of Brittany's absence from school.

As the Court explained in *Moses*, application of the public duty doctrine as a "blanket defense" to all actions of police officers "would not be consistent with the purpose of the public duty doctrine, which is to shield[] the state and its political subdivisions from tort liability arising out of discretionary governmental actions." *Moses*, 149 N.C. App. at 618, 561 S.E.2d at 335 (alteration in original) (internal quotation marks omitted). We must, therefore, first determine whether plaintiff's claims involve "the type of discretionary governmental action shielded by the public duty doctrine," such as those acts that involve "actively weighing the safety interests of the public." *Id.* at 618-19, 561 S.E.2d at 335 (internal quotation marks omitted).

**SMITH v. JACKSON CTY. BD. OF EDUC.**

[168 N.C. App. 452 (2005)]

N.C. Gen. Stat. § 7B-301 (2003) provides that "[a]ny person . . . who has cause to suspect that any juvenile is abused . . . shall report the case of that juvenile to the director of the department of social services in the county where the juvenile resides or is found." N.C. Gen. Stat. § 7B-310 (2003) states that "[n]o privilege shall be grounds for any person or institution failing to report that a juvenile may have been abused . . . even if the knowledge or suspicion is acquired in an official professional capacity . . . ." *See also* N.C. Gen. Stat. § 115C-400 (2003) (with respect to schools, providing: "Any person who has cause to suspect child abuse or neglect has a duty to report the case of the child to the Director of Social Services of the county, as provided in Article 3 of Chapter 7B of the General Statutes.").

Given the mandatory language and broad application of N.C. Gen. Stat. § 7B-301 to the general public, we conclude that the duty to report child abuse is not the type of discretionary law enforcement function shielded by the doctrine. Hess was not required—nor was he permitted—to weigh the safety interests of the public when he decided not to report Jeremy's possible statutory rape of Brittany or Brooks' sexual exploitation of Brittany and Jeremy. Rather, his duty to report abuse was imposed by statute and involved no deliberation or discretionary consideration. Hess' failure to report known child abuse was, therefore, outside the scope of conduct generally associated with law enforcement, and the public duty doctrine does not bar this claim.

In addition, "there are two well-established exceptions to the doctrine that prevent inequities to certain individuals: (1) when there is a special relationship between the injured party and the police; and (2) when a municipality creates a special duty by promising protection to an individual." *Wood*, 355 N.C. at 166, 558 S.E.2d at 495. To the extent the claims of plaintiff, the Board of Education, and Balcerek are based on negligence other than a failure to report abuse, we hold that the amended complaint and cross-claims sufficiently allege that the facts of this case fall within these exceptions to the public duty doctrine.

Our Supreme Court applied the special relationship exception in *Isenhour*, holding that the public duty doctrine did not apply to a city that "by providing school crossing guards, has undertaken an affirmative, but limited, duty to protect certain children, at certain times, in certain places." *Isenhour*, 350 N.C. at 608, 517 S.E.2d at 126. The Court explained:

[T]here is a meaningful distinction between application of the public duty doctrine to the actions of local law enforcement, as in *Braswell* . . . and the application of the doctrine to the actions of a school crossing guard . . . . Unlike the provision of police protection to the general public . . . , a school crossing guard is employed to provide a protective service to an identifiable group of children. Moreover, the relationship between the crossing guard and the children is direct and personal, and the dangers are immediate and foreseeable.

*Id.* at 607-08, 517 S.E.2d at 126.

Taking the plaintiff's and cross-claimants' allegations as true in this case, Hess, as a school resource officer, undertook to provide protective services not to the public generally, but to an identifiable group of students at Blue Ridge School, including Brittany, during school hours. The pleadings do not allege that Hess breached a general law enforcement duty, but rather breached his duty to the school, the principal, and the children.

Our General Assembly has defined "a school resource officer" as a "person who is regularly present in a school for the purpose of promoting and maintaining safe and orderly schools . . . ." N.C. Gen. Stat. § 14-202.4(d)(3a) (2003). Indeed, the legislature has acknowledged the special nature of the relationship between a school resource officer and a student: if a school resource officer "takes indecent liberties with a victim who is a student, at any time during or after the time the defendant and victim were present together in the same school but before the victim ceases to be a student, the defendant is guilty of a Class I felony, unless the conduct is covered under some other provision of law providing for greater punishment." N.C. Gen. Stat. § 14-202.4(a) (2003). Further, in order to implement the state policy "that all schools should be safe, secure, and orderly," N.C. Gen. Stat. § 115C-105.45 (2003), every school must be subject to a "safe school plan" that includes "[a] plan to work effectively with local law enforcement officials and court officials to ensure that schools are safe and laws are enforced." N.C. Gen. Stat. § 115C-105.47 (2003). These statutory provisions indicate that there is a direct and personal relationship between the school resource officer and the children and that danger to those students while attending school is foreseeable—just as was the case with the school crossing guards in *Isenhour*.

Significantly, this Court has also distinguished the role of a school resource officer from that of a general law enforcement officer in the

Fourth Amendment search context. In contrast to searches by police, searches by school officials do not require a warrant or probable cause under *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 83 L. Ed. 2d 720, 734, 105 S. Ct. 733, 742 (1985). As this Court has explained, "the *T.L.O.* standard has also been applied to cases where a school resource officer conducts a search, based upon his own investigation or at the direction of another school official, in the furtherance of well-established educational and safety goals." *In re D.D.*, 146 N.C. App. 309, 318, 554 S.E.2d 346, 352, *appeal dismissed and disc. review denied*, 354 N.C. 572, 558 S.E.2d 867 (2001). On the other hand:

> Courts draw a clear distinction between [these] categories of cases and those cases in which outside law enforcement officers search students as part of an independent investigation or in which school official[s] search students at the request or behest of the outside law enforcement officers and law enforcement agencies. . . . The purpose of the search conducted by so-called outside police officers is not to maintain discipline, order, or student safety, but to obtain evidence of a crime.

*Id.*, 554 S.E.2d at 252-53 (internal quotation marks omitted). We have, thus, already acknowledged that school resource officers acting to preserve student safety are not acting in a general law enforcement capacity.

In light of state policies, related case law authority, and the allegations of the claims, we cannot say to a certainty that the claimants will be unable to prove a special relationship sufficient to except the parties' negligence claims from the public duty doctrine. The claims presented by this case are more analogous to those in *Isenhour* than to those in *Braswell*. Accordingly, the trial court properly denied the motion to dismiss based on the special relationship exception.

With respect to the "special duty" exception, the public duty doctrine does not apply " 'when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902 (quoting *Coleman v. Cooper*, 89 N.C. App. 188, 194, 366 S.E.2d 2, 6, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), *partially overruled on other grounds*, *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997)). In *Braswell*, the Court acknowledged that a sheriff's

promise to protect a woman as she went to and from work was arguably specific enough to fall within the special duty exception. *Id.* at 372, 410 S.E.2d at 902.[3]

Here, as the school defendants have observed, there is no statutory requirement that a sheriff provide a school resource officer. Nonetheless, according to the Board of Education's cross-claim, Hess, acting as a school resource officer, "undertook to provide protection to children at Blue Ridge School, had a special duty to these Defendants to perform his duties and obligations in a professional manner, and had a special duty to protect [Brittany] from criminal acts." Balcerek's cross-claim similarly alleges that "Hess, in his capacity as the school resource officer assigned to Blue Ridge School, *had a duty to Balcerek* and to minor plaintiff Brittany Smith to perform his duties and obligations in a professional manner and to protect all school children from criminal acts." These allegations allege a special duty to the school and principal apart from a general law enforcement obligation.[4] The precise nature of Hess' duties and any contractual obligations between the Board of Education and the Sheriff's Department will be the subject of discovery and subsequent review, but on the basis of the pleadings we find that the cross-claims sufficiently allege a special duty to defeat a motion to dismiss based on the public duty doctrine.

### C. Breach of Fiduciary Duty Claim Alleged against Hess

Plaintiff has also alleged that Hess' actions constituted a breach of fiduciary duty. Our appellate courts have never addressed whether the public duty doctrine applies to a claim for breach of fiduciary duty; nor have we found a decision of any other jurisdiction addressing this question.

"Breach of fiduciary duty occurs when there is unfair dealing with one to whom the defendant has an active responsibility; it requires a special relationship unlike actual fraud." *Speck v. N.C. Dairy Found., Inc.*, 64 N.C. App. 419, 428, 307 S.E.2d 785, 792 (1983), *rev'd on other grounds*, 311 N.C. 679, 319 S.E.2d 139 (1984). As the Supreme Court has explained, a fiduciary relationship exists when:

---

3. That fact was not sufficient to establish liability because the woman was killed while on a midday errand and thus not within the scope of protection promised by the sheriff. *Id.*

4. Similarly, plaintiff has alleged that Hess breached his duty as a school resource officer to report Brittany's absences from school to the school administrative staff, suggesting a special duty to the school.

there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. . . . [I]t extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.

*Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (internal quotation marks omitted).

This fiduciary relationship is analogous to the special relationship that provides an exception to the public duty doctrine. Accordingly, we hold that if plaintiff is able to prove the special relationship necessary to support a claim for breach of fiduciary duty, then she will also have established an exception to the public duty doctrine.[5] Since defendant has not challenged on appeal plaintiff's allegations regarding the existence of a fiduciary relationship, we hold that the trial court properly denied the motion to dismiss.

### D. Claims of Negligent Supervision Against Cruzan

Plaintiff, the Board of Education, and Balcerek have asserted against Cruzan claims for negligent supervision, hiring, and retention. Defendant Cruzan's argument that these claims are barred by the public duty doctrine cannot be squared with *Braswell* or with this Court's decision in *Leftwich v. Gaines,* 134 N.C. App. 502, 521 S.E.2d 717, *disc. review denied,* 351 N.C. 357, 541 S.E.2d 713-14 (1999).

In *Braswell,* the plaintiff sued for both negligent failure to protect and negligent supervision and retention. The Supreme Court applied the public duty doctrine only to the negligent failure to protect claim; it addressed the merits of the negligent supervision and retention claim. As this Court observed in *Leftwich*:

[T]he public duty doctrine is not incompatible with negligent supervision. The public duty doctrine was adopted in *Braswell* . . . . Our Supreme Court held that the trial court properly directed a verdict in favor of the defendant on the issue of negligent failure to protect because the public duty doctrine prevented a lawsuit against the sheriff. The Court also found that the trial court properly directed a verdict for the defendant as to negligent supervision and retention; however, the *Braswell* Court did not apply the public duty doctrine to the claim of negligent

---

5. We do not mean to suggest that the special relationship exception to the doctrine requires proof of a fiduciary relationship.

retention and supervision, even though the doctrine had been asserted as a defense and even though the Court had relied on the doctrine elsewhere in its opinion.

*Leftwich*, 134 N.C. App. at 514, 521 S.E.2d at 726. This Court then pointed out that the Supreme Court instead reviewed whether the evidence was sufficient to establish that the sheriff had the notice necessary to impose liability for negligent supervision and retention. *Id.* at 514-15, 521 S.E.2d at 726.

Based on *Braswell*, this Court in *Leftwich* also declined to apply the public duty doctrine to bar a negligent supervision claim, but rather reviewed the evidence to determine whether plaintiff offered sufficient evidence to allow her claim of negligent supervision to be submitted to the jury. Because it concluded that plaintiff had offered evidence that the municipality had notice of prior wrongdoing by the individual defendant of the same nature as that involved in the lawsuit and yet did not take action adequate to cause the individual defendant to change his ways, this Court held that the trial court properly declined to direct a verdict on plaintiff's claim for negligent supervision. *Id.* at 515, 521 S.E.2d at 727.

*Braswell* and *Leftwich* both involved review of a trial court's decision on a motion for a directed verdict during a jury trial. Although these two decisions compel our holding that the public duty doctrine does not bar the negligent supervision and retention claims, the question whether the parties have adequately alleged those claims is not before us.

## Motion to Amend

[3] We next consider defendant Cruzan's contention that the trial court erred in granting plaintiff's motion to amend her complaint a second time to add as defendants: (1) Cruzan in his individual capacity and (2) Western Surety, the surety on Cruzan's official bond. Cruzan argues that the amendment was futile since he is entitled to public official immunity so long as his acts were neither malicious nor corrupt. He contends that his surety is immune from liability for the same reasons.

"A motion to amend the pleadings is addressed to the sound discretion of the trial court. The exercise of the court's discretion is not reviewable absent a clear showing of abuse. The party opposing the amendment has the burden to establish that it would be prejudiced by the amendment. Reasons justifying denial of an amendment are (a)

undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Carter v. Rockingham County Bd. of Educ.*, 158 N.C. App. 687, 690, 582 S.E.2d 69, 72 (2003) (internal citations and quotation marks omitted).

We turn first to the question whether the trial court erred in allowing plaintiff to sue Cruzan individually. A public officer, such as defendant Cruzan, "is shielded from liability unless he engaged in discretionary actions which were allegedly: (1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119 (internal citations omitted), *disc. review denied*, 335 N.C. 559, 439 S.E.2d 151 (1993). *See also Epps v. Duke Univ.*, 122 N.C. App. 198, 204, 468 S.E.2d 846, 851 ("The exceptions to official immunity have expanded over the years, with bad faith and willful and deliberate conduct now operating as additional common law bases for liability."), *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996).

Plaintiff alleges that Cruzan's action in assigning Hess to the school while concealing that Hess had previously assaulted a minor was in "willful, wanton and reckless disregard for the safety of Brittany and other students at the Blue Ridge School." Because the proposed amended complaint alleges willfulness and a factual basis for that general allegation, we cannot find that the trial court abused its discretion in allowing plaintiff's motion to amend to add claims against Cruzan individually.

As to whether the trial court erred in allowing plaintiff to add Western Surety as a defendant, N.C. Gen. Stat. § 58-76-5 provides, in relevant part:

> Every person injured by the neglect, misconduct, or misbehavior in office of any clerk of the superior court, register, surveyor, sheriff, coroner, county treasurer, or other officer, may institute a suit or suits against said officer or any of them *and their sureties upon their respective bonds* for the due performance of their duties in office in the name of the State, without any assignment thereof; and no such bond shall become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and every such officer *and the sureties on his official bond* shall be liable to the per-

son injured for all acts done by said officer by virtue or under color of his office.

(Emphasis added.)

This statute "allows a plaintiff to maintain suit against a public officer and the surety on his official bond for acts of negligence in performing his official duties." *Slade v. Vernon*, 110 N.C. App. 422, 427, 429 S.E.2d 744, 746 (1993). "By expressly providing for this cause of action, the General Assembly has abrogated common law immunity where a public official causes injury through 'neglect, misconduct, or misbehavior' in the performance of his official duties or under color of his office." *Id.* at 427-28, 429 S.E.2d at 747. Immunity is thus immaterial with respect to a claim on a bond under N.C. Gen. Stat. § 58-76-5. The trial court, therefore, did not err in allowing plaintiff to amend her complaint to add Western Surety as a defendant.

Affirmed.

Chief Judge MARTIN and Judge HUDSON concur.