SHERRI B. BLAYLOCK, as Guardian Ad Litem for H.L., Minor, and B.L., Minor, Plaintiffs v. NORTH CAROLINA DEPARTMENT OF CORRECTION—DIVISION OF COMMUNITY CORRECTIONS, Defendant

No. COA09-65

(Filed 3 November 2009)

**1. Appeal and Error— interlocutory order—immunity through public duty doctrine—immediately appealable**

The defense of governmental immunity through the public duty doctrine affects a substantial right and is immediately appealable.

**2. Immunity— public duty doctrine—probation officer's placement of sexual offender—special relationship—summary judgment**

Defendant's motion for summary judgment based on the public duty doctrine was correctly denied by the Industrial Commission in an action arising from a probation officer's placement of a sexual offender in a home with children whom he eventually abused. The harm was not the direct result of the probation officer's actions, and there was a question as to whether a special relationship existed between the probation officer and the children.

Appeal by defendant from order entered 10 September 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 31 August 2009.

*Janet, Jenner & Suggs, LLC, by John C. Hensley, Jr., for plaintiffs-appellees.*

*Roy Cooper, Attorney General, by Amar Majmundar, Special Deputy Attorney General, and Tina Lloyd Hlabse, Assistant Attorney General, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals an order of the North Carolina Industrial Commission denying its Motion for Summary Judgment. We affirm the Commission's order.

In February 2003, Kim Hemphill ("Ms. Hemphill") was employed by defendant as a probation officer in McDowell County, North Carolina. As part of her duties, she was assigned to supervise James Oakes ("Mr. Oakes"), who was on probation for convictions of indecent exposure and two counts of simple assault. Mr. Oakes's problems extended beyond his involvement with the North Carolina court system; not only was he diagnosed as bi-polar and schizophrenic, but he had also been identified as a sexual offender in the mid-1990's by the staff at Foothills Mental Health. As a result, multiple McDowell County agencies were familiar with Mr. Oakes and were aware of his label as a sexual offender.

At a meeting with Mr. Oakes on 14 February 2003, Ms. Hemphill learned he was living in a motel with another probationer, which Ms. Hemphill's supervisor determined was an inappropriate living arrangement. In order to correct the situation, Ms. Hemphill began making phone calls to assist Mr. Oakes in finding suitable living arrangements. After unsuccessfully calling Mr. Oakes's mother and a homeless shelter, Mr. Oakes suggested that he might be able to stay with David Ledford ("Mr. Ledford") and Sherri Blaylock ("Ms. Blaylock"), a married couple related to Mr. Oakes through marriage. Ms. Hemphill contacted Ms. Blaylock at work to ask if Mr. Oakes could stay with her family. Ms. Blaylock indicated that she would have to speak with Mr. Ledford before she would allow Mr. Oakes to move into their home.

With this information, Ms. Hemphill drove to the home of Ms. Blaylock and Mr. Ledford ("Blaylock/Ledford home") to discuss the issue with Mr. Ledford. When she arrived at the home, Mr. Ledford was there with his four children, including H.L. and B.L. ("the minor children-plaintiffs"), and two other acquaintances. Ms. Hemphill informed Mr. Ledford of her conversation with Ms.

Blaylock and indicated that it was all right with Ms. Blaylock for Mr. Oakes to stay at their home if it was all right with Mr. Ledford. Mr. Ledford agreed to the arrangement, and Ms. Hemphill left Mr. Oakes in his care. Before she left, Ms. Hemphill gave Mr. Ledford her business card and told him to give her a call if they had any problems. Shortly thereafter, on or about 16 February 2003, Mr. Oakes sexually assaulted the minor children-plaintiffs in their bedroom at the Blaylock/Ledford home.

Ms. Blaylock, on behalf of the minor children-plaintiffs, initiated this action before the North Carolina Industrial Commission on 30 December 2003 alleging that defendant's agent, Ms. Hemphill, failed to exercise reasonable care in placing Mr. Oakes in the Blaylock/Ledford home, as she knew or should have known he posed a substantial risk of harm to the minor children-plaintiffs. Defendant moved for summary judgment on 8 January 2007 on the grounds that the public duty doctrine applied as a bar to the minor children-plaintiffs' claim. The Deputy Commissioner granted defendant's motion on 12 December 2007, holding that the public duty doctrine applied absent any evidence of an exception. The minor children-plaintiffs appealed to the Full Commission on 27 December 2007. On 10 September 2008, the Full Commission reversed the Deputy Commissioner's order granting defendant's summary judgment motion. In doing so, the Full Commission held that the public duty doctrine does not apply to the present case, or, in the alternative, a genuine issue of material fact exists as to whether the present facts fit within the special relationship exception to the public duty doctrine. Defendant appeals.

The sole issue on appeal is whether defendant is shielded from liability by the public duty doctrine. For the reasons stated below, we conclude that there is a genuine issue of material fact as to whether, upon the evidence before the Commission considered in the light most favorable to the minor children-plaintiffs, their claim is barred by the public duty doctrine, as the facts presented establish the existence of a special relationship.

[1] As an initial matter, defendant's appeal is interlocutory. *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy"), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Generally, an interlocutory

order is not immediately appealable to this Court. *Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 403, 442 S.E.2d 75, 77, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994). However, where a substantial right is affected, a party may appeal immediately from an interlocutory order. N.C. Gen. Stat. § 1-277(a) (2007); *see id.* This Court has held that the defense of governmental immunity through the public duty doctrine affects a substantial right and is, therefore, immediately appealable. *Clark*, 114 N.C. App. at 403, 442 S.E.2d at 77. Accordingly, defendant's appeal is properly before this Court.

[2] "On appeal, an order [denying] summary judgment is reviewed *de novo*." *Tiber Holding Corp. v. DiLoreto*, 170 N.C. App. 662, 665, 613 S.E.2d 346, 349, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005). Thus, in viewing the evidence in the light most favorable to the non-moving party, this Court must determine "whether the pleadings, interrogatory answers, affidavits or other materials contained a genuine question of material fact, and whether at least one party was entitled to a judgment as a matter of law." *Medley v. N.C. Dep't of Corr.*, 99 N.C. App. 296, 298, 393 S.E.2d 288, 289 (1990), *aff'd*, 330 N.C. 837, 412 S.E.2d 654 (1992); *accord Bruce-Terminex Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Summary judgment is proper where "there are no genuine issues of material fact, and the plaintiff fails to demonstrate one of the essential elements of the claim." *Parish v. Hill*, 350 N.C. 231, 236, 513 S.E.2d 547, 550 (citing *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995), *disc. rev. denied*, 342 N.C. 656, 467 S.E.2d 715 (1996); *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985)), *reh'g denied*, 350 N.C. 600, 537 S.E.2d 215 (1999).

The minor children-plaintiffs have based their claim against defendant in negligence. In a claim for negligence, there must exist a "legal duty owed by a defendant to a plaintiff." *Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). However, when the public duty doctrine applies, the government entity, as the defendant, owes no *legal* duty to the plaintiff. *See Myers v. McGrady*, 360 N.C. 460, 463, 628 S.E.2d 761, 764 (2006). In essence, "[i]f the plaintiff alleges negligence by failure to carry out a recognized public duty, and the State does not owe a corresponding special duty of care to the plaintiff individually, then the plaintiff has failed to state a claim in negligence." *Id.* (citing *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 196, 499 S.E.2d 747, 749-50 (1998); *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716, *reh'g denied*, 502 S.E.2d 836, *cert. denied*, 525 U.S. 1016, 142

L.E.2d 449 (1998)). Therefore, if the public duty doctrine applies, summary judgment in favor of the defendant is appropriate. *Id.*

The public duty doctrine was officially recognized in this State in *Braswell v. Braswell* as a shield from liability for a municipality for its law enforcement officials' failure to provide protection to individual citizens from the criminal acts of a third party. 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991), *reh'g denied,* 330 N.C. 854, 413 S.E.2d 550 (1992). "This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act." *Id.* In recognizing the general doctrine, our Supreme Court additionally acknowledged two exceptions to the public duty doctrine:

> (1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.

*Braswell,* 330 N.C. at 371, 410 S.E.2d at 902 (internal quotation marks omitted). Accordingly, if either exception applies, the public duty doctrine no longer operates as a shield against liability. *See id.*

In *Humphries v. North Carolina Department of Correction,* this Court extended the application of the public duty doctrine to probation officers for their failure to protect the public by appropriately supervising their probationers. 124 N.C. App. 545, 547, 479 S.E.2d 27, 28 (1996), *disc. review improvidently allowed,* 346 N.C. 269, 485 S.E.2d 293 (1997). In that case, Kenneth Miller ("Miller"), while on probation and under electronic house arrest, assaulted Tyrone Humphries and killed Stacey Humphries. *Humphries,* 124 N.C. App. at 546-47, 479 S.E.2d at 27-28. Miller's probation officer, aware of his violent nature, failed to contact his employer to confirm his employment status. *Humphries,* 124 N.C. App. at 546, 479 S.E.2d at 27. Additionally, the probation officer failed to take action when he discovered that Miller's electronic leg band had broken. *Humphries,* 124 N.C. App. at 546-47, 479 S.E.2d at 27. In a suit against the North Carolina Department of Correction, this Court reasoned that the probation officer's duty to supervise was a duty owed to the general public. *Humphries,* 124 N.C. App. at 548, 479 S.E.2d at 28. Therefore, the public duty doctrine barred any claims against the

Department of Correction for the probation officer's failure to properly supervise Miller. *Id.*

The present case involves a probation officer who, while exercising her duties to supervise Mr. Oakes, facilitated his placement in the Blaylock/Ledford home. This alleged negligent act resulted in Mr. Oakes sexually assaulting the minor children-plaintiffs. It is apparent from these facts that Ms. Hemphill's actions constitute a "failure to [provide] police protection to specific individuals" from the criminal acts of a third party. *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901. Therefore, based on this Court's ruling in *Humphries*, we hold that the public duty doctrine applies to the facts of this case.

The Full Commission below, in holding that the public duty doctrine was inapplicable to the present case, reasoned that "the affirmative actions of Defendant's agent and employee, Ms. Hemphill, directly resulted in the harm caused to the minor Plaintiffs." As such, it held that "[t]he facts of this case do not arise from Defendant's failure to make a discretionary allocation of agency resources . . . ." Though we agree with the Full Commission's statement of the law, we do not agree with its application to the present case.

This Court has never applied the public duty doctrine when a police officer's affirmative actions have directly caused harm to a plaintiff. *Moses v. Young*, 149 N.C. App. 613, 616, 561 S.E.2d 332, 334 ("An exhaustive review of the public duty doctrine as applied in North Carolina reveals no case in which the public duty doctrine has operated to shield a defendant from acts directly causing injury or death."), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 199 (2002); *see also Smith v. Jackson Cty Bd. of Educ.*, 168 N.C. App. 452, 460, 608 S.E.2d 399, 406 (2005). In *Smith v. Jackson County Board of Education*, this Court evaluated the application of the public duty doctrine to the actions of a school resource officer. 168 N.C. App. at 459-60, 608 S.E.2d at 406. There, the plaintiff sued the defendant under N.C.G.S. § 99D-1 for "interference with civil rights." *Smith*, 168 N.C. App. at 460, 608 S.E.2d at 406. The Court reasoned that a claim under this statute "involve[d] intentional conduct." *Id.* Additionally, the facts alleged in support of this claim reflected affirmative conduct by the defendant's agent, the school resource officer, that directly resulted in the interference with the plaintiff's civil rights. *Id.* Accordingly, the public duty doctrine did not bar the claim. *Id.*

This Court's focus in finding the public duty doctrine inapplicable to the cases discussed above has hinged on the fact that, in those

cases, the police officers' conduct *directly* caused harm, instead of merely being an *indirect* cause of the plaintiffs' injuries. *Moses*, 149 N.C. App. at 616, 561 S.E.2d at 334. The focus has not been, as the minor children-plaintiffs urge, on the distinction between the defendants' affirmative actions versus their failure to act. *Clark*, 114 N.C. App. at 404, 442 S.E.2d at 77 ("The breach of duty may be a negligent act or a negligent failure to act."); *see also Hobbs ex rel. Winner v. N. C. Dept. of Human Res.*, 135 N.C. App. 412, 417-19, 520 S.E.2d 595, 600-01 (1999) (holding that the affirmative actions of DSS in placing a sexually abused child in a foster home with other small children without properly warning the foster parents fell within the applicability of the public duty doctrine, however applying the special relationship and the special duty exceptions); *see also Stafford v. Barker*, 129 N.C. App. 576, 584, 502 S.E.2d 1, 6 (holding that the plaintiff's claim against a sheriff for his affirmative actions in negligently releasing a person who later shot and killed the plaintiff was barred by the public duty doctrine and neither of the exceptions applied), *disc. review denied*, 348 N.C. 695, 511 S.E.2d 650 (1998). This reasoning is in line with the stated purpose in applying the public duty doctrine to the actions of police officers: that "[t]his rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act" of another. *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901.

The present facts are distinguishable from the cases discussed above. Here, Ms. Hemphill's actions did not directly cause harm to the minor children-plaintiffs. Instead, her actions with regards to Mr. Oakes only indirectly resulted in his sexual assault of the minor children-plaintiffs. Accordingly, we depart from the Full Commission's conclusion and hold that the public duty doctrine applies to the present case.

However, our discussion does not end here. The public duty doctrine, as stated above, is subject to two exceptions, the special duty exception and the special relationship exception, and a plaintiff's claim will survive if he can establish the existence of either. *Watts v. N.C. Dep't of Env't and Natural Res.*, 362 N.C. 497, 498, 666 S.E.2d 752, 753 (2008). The minor children-plaintiffs did not argue before the Full Commission or before this Court that the special duty exception applies, and there is no evidence in the record that Ms. Hemphill made any specific promise of protection. *See Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Therefore, we must only address the applicability of the special relationship exception.

A special relationship exists when there are "representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed." *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 338, 511 S.E.2d 41, 44 (internal quotation marks omitted), *cert. denied*, 350 N.C. 851, 539 S.E.2d 13 (1999), *overruled on other grounds by Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000). This exception has generally been discussed with regards to relationships between an informant and a police officer or between inmates and the State. *Multiple Claimants v. N.C. Dep't of Health and Human Services, Div. of Facility Services, Jails and Detention Services*, 361 N.C. 372, 379, 646 S.E.2d 356, 360 (2007); *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. However, this is not an exhaustive list, and in fact, this Court has applied the special relationship exception to other factual situations. *See Hobbs*, 135 N.C. App. at 419, 520 S.E.2d at 601.

In *Hobbs ex rel. Winner v. North Carolina Department of Human Resources*, Kemesha and Michael Hobbs ("the Hobbs family") sued the Wake County Department of Social Services and various other agencies on behalf of their daughter for the negligent placement of a twelve-year-old boy in their foster home. 135 N.C. App. at 413-15, 520 S.E.2d at 598. As a result of this placement, the young boy sexually assaulted their daughter. *Hobbs*, 135 N.C. App. at 414, 520 S.E.2d at 598. The trial court granted defendants' motion to dismiss pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). *Hobbs*, 135 N.C. App. at 415, 520 S.E.2d at 598. In an appeal by the Hobbs family, this Court reasoned that the motion to dismiss was improperly granted because the facts alleged properly asserted a special relationship between the Hobbs family and the defendants. *Hobbs*, 135 N.C. App. at 419, 520 S.E.2d at 601. In reaching this conclusion, this Court looked to the direct contact and discussions between the defendants and the Hobbs family. *Id.*

*Hobbs* is instructive in our application of the special relationship exception to the present case. Viewing the facts alleged in the light most favorable to the minor children-plaintiffs, as we are required to do, *Bruce-Terminex Co.*, 130 N.C. App. at 733, 504 S.E.2d at 577, the evidence shows that Ms. Hemphill actively made efforts to assist Mr. Oakes in securing a place to stay with Ms. Blaylock and Mr. Ledford. She not only directly called Ms. Blaylock, but she drove Mr. Oakes to the Blaylock/Ledford home where she specifically spoke with Mr. Ledford. In this conversation, Ms. Hemphill and Mr. Ledford dis-

cussed Mr. Oakes' need to attend mental health and his mandatory probation appointments with Ms. Hemphill. Despite the fact that Ms. Hemphill saw small children in the home, she did not inform Mr. Ledford about Mr. Oakes' charges of indecent exposure and assault or his past history as a sexual offender. Finally, before she left, Ms. Hemphill gave Mr. Ledford her card and instructed him to call her if he had any problems. The relationship between the minor children-plaintiffs and Ms. Hemphill in this case, like the relationship between the parties in *Hobbs*, was direct and personal. *See Hobbs*, 135 N.C. App. at 419, 520 S.E.2d at 601. Additionally, as a result of Ms. Hemphill's actions, the minor children-plaintiffs were placed at a greater risk of being sexually assaulted than they would have been had Mr. Oakes not been placed in their home. Therefore, these facts taken together create an issue as to whether Ms. Hemphill's negligent conduct in actively placing Mr. Oakes in the Blaylock/Ledford home without properly warning the family "cause[d] the victim(s) to detrimentally rely on [her] such that the risk of harm as the result of [her] negligence is something more than that to which the victim[s were] already exposed." *Vanasek*, 132 N.C. App. at 338, 511 S.E.2d at 44 (internal quotation marks omitted). Accordingly, there is a genuine issue as to whether a special relationship existed between defendant and the minor children-plaintiffs.

The Full Commission, in reaching its conclusion that a special relationship existed in the present case, relied on the mandatory reporting requirements set forth in N.C.G.S. § 7B-301. After careful review, we, however, conclude that reliance on this statute in the present case is inappropriate. N.C.G.S. § 7B-301 provides that "Any person or institution who has cause to suspect that any juvenile is abused, neglected, or dependent, as defined by G.S. 7B-101 . . . shall report the case of that juvenile to the director of the department of social services . . . ." N.C. Gen. Stat. § 7B-301 (2007). Although this Court held in *Smith* that N.C.G.S. § 7B-301 prevented the application of the public duty doctrine in that case, the facts in the present case require a different result. 168 N.C. App. at 462, 608 S.E.2d at 407-08. There, the plaintiff specifically alleged that the school resource officer was negligent by failing to report knowledge of a teacher's actions in promoting a sexual relationship between the plaintiff, who was a student, and another student. 168 N.C. App. at 461, 608 S.E.2d at 407. In the present case, the minor children-plaintiffs have not alleged that defendant, through Ms. Hemphill, was negligent in failing to report any known child abuse of the minor children-plaintiffs by Mr. Oakes. Therefore, this statute is inapplicable to the facts of this case. Hence,

a special relationship is not created through N.C.G.S. § 7B-301 but instead through the nature of the relationship between defendant through its agent, Ms. Hemphill, and the minor children-plaintiffs.

Therefore, we hold that the public duty doctrine, though applicable to the present case, does not bar plaintiff's claim, as there is a genuine issue regarding the existence of a special relationship between defendant, through its agent Ms. Hemphill, and the minor children-plaintiffs. Accordingly, we affirm the Full Commissions denial of defendant's summary judgment motion.

Affirmed.

Judges BRYANT and GEER concur.